WILLIAM M. WEEKS *v.* LOREN PRESCOTT AND WILLIAM H. PRESTON.

*Trespass. Sale. Attachment. Change of Possession. Vendor and Vendee. Referee. A Sale under Compromise. Proceedings in Bankruptcy not a Judicial Sale. Damages.*

1. A sale is fraudulent in law unless there is a change of possession ; possession in the vendee, open, notorious and exclusive ; that is, apparent and such as would indicate to an observer a change of ownership ; exclusive, not joint ; and if any of these requisites are wanting to the sale, the property is liable to attachment by the creditors of the vendor, notwithstanding the *bona fides* of the transaction.

2. When the purchaser of personal property acquires the title to the land on which it is situated, it is not necessary to remove it ; but when he permits the vendor to remain upon the premises, and control the property, his title, and the notice given by the record, are insufficient to change the rule.

3. During the pendency of bankruptcy proceedings the creditors accepted the proposition of compromise, under the United States statute of 1874, and the property was sold by the owner by leave or order of court ; *held,* that it was not a *judicial* sale, and that the rule as to a change of possession applied.

4. Here were two sales ; 1st, from the vendor to his brother, and then by the vendee to a son of the vendor. The first sale was fraudulent in law ; the second, both in law and in fact ; *held,* that the second vendee took only the rights of the first.

5. It was a sale of an entire stock of goods commonly kept in a country store. The vendor remained in possession as agent of the vendee, selling and replenishing the stock with the avails of what was sold ; *held,* that the goods remaining of

those originally purchased by the first vendee, were attachable ; but those replaced, were not attachable on the debts of the vendor. A different rule would probably prevail where the sale is fraudulent in fact.*

6. Taking a lease of the store in which the goods were situated, and having it recorded ; the transfer of the policy of insurance to the vendee ; opening new books of account ; buying and having goods sent in the name of the vendee,— these are facts that tend to show a sufficient possession. But, in the opinion of the court, they are outweighed by the facts, that, the vendor continued in the control and management of the goods, apparently as before the sale ; that the vendee continued to board in his father's (vendor's) family as before ; that the goods remained in the same store, and that to a common observer the apparent possession did not indicate a different possession.

7. Damages for the interruption of the plaintiff's business by attaching his goods are wholly disallowed.

8. The referee should have found whether the sale was fraudulent in law, instead of reporting the facts ; but as neither party expressed a wish to have the case recommitted, the court disposed of it.

THIS case was heard at the June Term, 1879. Judgment was rendered on the following report, Ross, J., presiding :

### REFEREE'S REPORT.

For many years previous to May, 1875, G. H. and J. M. Weeks had been extensively engaged as partners in selling goods and buying farm produce, keeping on sale such goods as are usually kept in country stores. They commenced trading at what is called Lyndon Corner, and continued to do business in a store there until said May, 1875. More recently, and previous to said last mentioned time, they extended their business, and added to it a store and goods at Lyndonville, which said George H. took the principal charge of. John M. remained at Lyndon Corner at the old store. Both the partners, however, continued jointly interested in all the business that each did, and both participated in conducting the business generally. In May, 1875, they failed and were unable to pay their debts. Such bankruptcy proceedings were had among others as is shown by the five papers marked " 18 B 1," " 18 B 2," " 18 B 3," " 18 B 4," " 18 B 5," respectively, which papers were admitted against the objections of the defendants, who waived any objection that they were not in form or properly authenticated, but objected to the substance thereof. Whatever proceedings were had, resulted in the composition resolutions marked, " 18 B 2," as aforesaid. Upon the passage of said resolutions, said G. H. and J. M. Weeks, (being unable to convert their goods into money,) executed their notes to their creditors for the 25 per cent. named in said compo-

---

* See Roberts' Dig. 620 s. 147 ; *Ridout* v. *Burton,* 27 Vt. 383.—REP.

sition resolutions, and among others, one to defendant Prescott, for $997.88, dated November 27th, 1875.

About this time, B. F. Weeks, a resident of Racine, Wisconsin, came to Lyndon. A short time previous to his coming he had proposed to assist his brothers, G. H. and J. M. Weeks; and it was arranged between him and them, that if an arrangement was made with the creditors of G. H. and J. M. Weeks, to accept 25 per cent. in discharge of their debts, that he (B. F.) would buy the goods in the Lyndonville store, and also those in the store at Lyndon Corner, if one H. H. Streeter did not purchase the latter. Soon after his return to the West, B. F. Weeks bought the goods in the store at Lyndonville, (Streeter purchasing those at the Corner). The goods so bought by B. F. Weeks were appraised by Streeter, with the assistance of G. H. Weeks, and this plaintiff, at $2907.09, for which, with some other property, B. F. advanced from time to time $3004.55. This appraisal was made in October, 1875. When the sale to B. F. Weeks, and the invoice of the goods were made, the goods had been moved from the store which had been used by said G. H. and J. M. (now called the Twombly store,) and put into what is called the new store in the same Lyndonville, and a little way from the Twombly store. Said appraisal being completed, G. H. went into business at the new store, and commenced selling the goods and replenishing the stock, from time to time as the trade required, as the agent of B. F. Weeks.

This plaintiff, who had been engaged in the store at the Corner, and in the Twombly store at Lyndonville, kept along with his father, G. H. Weeks, substantially the same as he had been doing before. John M. Weeks had nothing to do with these goods after they were removed from the Twombly store. G. H. Weeks continued to conduct the business in the new store as the agent of B. F. Weeks, this plaintiff assisting him, until the 15th day of January, 1877, when, as such agent, he sold this stock of goods to this plaintiff, who had become 21 years of age the April previous. The goods were then invoiced by G. H. Weeks and his son (plaintiff), at $2055.63. The plaintiff was then possessed of no considerable means. He paid for the goods by giving his notes, all amounting to $2002.95, which, with some small charges, made up the invoice amount of the goods ($2055.63). On the completion of said arrangements, the plaintiff took a lease of the store containing said goods from G. H. and Martha A. Weeks, wife of G. H. and mother of the plaintiff. This lease was recorded in the town clerk's office. Plaintiff also took a transfer of the policy of insurance on the goods in the store. The plaintiff,

against defendant's objection, introduced the deed, Connecticut and Passumpsic Rivers Railroad Company, to Martha A. Weeks, for the purpose of showing the title to the store to be in said Martha A. Weeks. If the defendant's objection is sustained by the court, the case will stand with no evidence to show who the owner of the store in fact was. The plaintiff opened books of account in his own name; commenced purchasing goods in the same manner, the goods being sent to him in his own name. For that portion of the goods so bought, which plaintiff paid for, either by paying cash down, or on short time, he paid out of the proceeds of the sales of the general stock and with about $200 of his own money.

Against defendants' objection, the plaintiff was permitted to testify, that at the time of the taking of the goods by defendants, he was owing in market, $381.90, for goods he had so bought; and upon this evidence, I find that fact to be as stated.

The plaintiff continued to board in his father's family the same as he had previously done, except that he now payed for his board by making it a distinct item of deal. G. H. established himself in business in no place other than at said store, but continued looking after the remnants of the business of the old firm, (which were constantly decreasing,) as he had been doing since 1875. He continued to sell goods and make charges on the plaintiff's books, substantially as he had done before the sale to plaintiff, and had the entire charge of the store when plaintiff was away from it. The apparent possession, to common observation, did not indicate a possession of the goods after the sale to plaintiff, different from what had been had of them before that sale, except in the particulars above referred to.

I find that the sale to plaintiff by G. H. Weeks, was for the sole purpose, on the part of G. H. and plaintiff, of preventing the goods being attached by the creditors of G. H. and J. M. Weeks.

The defendants ask that the fact that this purpose was known to B. F., and participated in by him, be found and stated in this report. But I do not so find the fact to be. I believe and find from the evidence, that B. F. purchased the goods for a full consideration; that when he payed the money he supposed it was to be used in paying up the creditors the 25 per cent. established by the composition resolutions, and that he supposed the debts of G. H. and J. M. would all be extinguished; and that his ignorance as to what was being done with the goods, and his neglect to call on his agent to account, may be attributed, more consistently, to his being engaged in his own business, in Wisconsin, and his con-

fidence in his brother G. H., than to the designs claimed by the defendants.

The plaintiff (G. H. Weeks assisting him, as herein before described), continued the business in the new store, selling the goods and replenishing the stock by purchases in market, until the 30th day of July, 1877, when the defendant Preston, as sheriff of Caledonia county, by direction of the defendant Prescott, attached and removed from the store, the goods comprising said stock as it existed at that time, and subsequently sold the same. For which taking, removal and sale, and the consequent injury to plaintiff, in breaking up his business and his loss of credit, this action is brought. The writ and declaration are referred to.

On the 30th day of said July, when the defendant Prescott directed the attachment of the goods, he knew of the sale of them to plaintiff, and the manner in which the plaintiff and his father were doing business, and that plaintiff claimed to own the goods. The officer found the plaintiff and G. H. Weeks both in the store when he made the attachment. The plaintiff then claimed to him to own the goods. To all the evidence tending to show such knowledge by Prescott, the defendants objected upon the ground that it was immaterial, and it was admitted against such objection. The defendants insist that the referee shall find, and state, that all the transactions between B. F. and G. H. and B. F. and Wm. M., through his agent G. H., were fraudulent and void. Whether the sale to B. F., and from B. F. to plaintiff, was void or not, as to this defendant Prescott, an attaching creditor of G. H. and J. M. Weeks, is submitted to the court on the facts herein before detailed, namely : That B. F. Weeks paid a full consideration for the goods ; that they remained in the possession of one of the partners, original owners, as agent of B. F., in the manner herein before described, until the sale to plaintiff as above detailed ; and that the possession of plaintiff and G. H., after said sale, was distinguished from what it was before by plaintiff's taking a lease of the store, putting it on the town records, taking an assignment of the policy of insurance, opening books, and ordering goods in his own name ; and the two (plaintiff and G. H.) doing the business generally, but always in the name of the plaintiff, and the fact that the sale to plaintiff was made for the purpose, on the part of plaintiff and G. H., of avoiding trouble from the creditors of G. H. and J. M., which purpose was not known to, or participated in, by B. F. Weeks.

If the court find that those facts, together with all the other facts, herein before recited, make the transactions between B. F.

and G. H. and J. M. and Wm. M., the plaintiff, all void, or that the sale to plaintiff is void, then I find that the defendants should recover their costs ; unless the court shall decide that the title to those goods purchased in market by plaintiff, after the sale to him was made, is not affected by the character of these transactions. The question as to how those goods with which the old stock was replenished shall be disposed of, is submitted to the court on the facts herein stated.

I find the value of all the goods taken by the defendants to be $2269.87, and the value of those on hand at that time, which were purchased by the plaintiff in market, after the sale to him by G. H. Weeks, agent of B. F., to be $610.50. I therefore find, if the court shall decide that the plaintiff is entitled to recover for all the goods taken, for him to recover $2269.87 ; and if the court shall decide that plaintiff is entitled to recover for those purchased by him in market as aforesaid, and no more, then he should recover the $610.50. I have computed interest on all said sums, to June 1, 1879. Whether plaintiff is entitled to recover either of said sums, is submitted to the court as herein before stated.

Plaintiff claims that he is entitled to recover for the interruption of his business and loss of credit, and, against the objections of the defendants, introduced evidence tending to show that in consequence of the attachment of the goods in question, he was thrown out of business and lost his credit, so as to be unable to purchase goods. Defendants claim that for such consequential damages no recovery can be had. I find this damage to be $300, and it results solely from the interruption of plaintiff's business and loss of credit. The question of his right to recover this item is submitted to the court upon all the facts hereinbefore detailed. The plaintiff claimed that the sale to B. F. Weeks was made under the direction of the United States district court for the district of Vermont, and was a judicial sale, and not to be controlled or affected by the possession of the goods, or the motives by which any transaction was had in respect to them, and that the money received of B. F. was to be used, under the order of said court, to pay the 25 per cent. dividend. This claim is submitted to the court, upon the papers heretofore referred to, and marked "18 B 1," "18 B 2," "18 B 3," "18 B 4," "18 B 5." Defendants introduced witnesses for the purpose of inpeaching the character of certain of plaintiff's witnesses for truth and veracity ; and plaintiff's counsel requested that they be examined separately; and it was so ordered against the defendant's objection to such order. Neither of the witnesses so examined was a party to this suit.

AMENDMENT TO REFEREE'S REPORT.

The report in this case having been recommitted to the referee, in reference to the matters specified in the motion to recommit, I find :

1st. That after the sale of the property in question from G. H. & J. M. Weeks to B. F. Weeks, the latter had nothing to do with the possession, management, or control of the property personally, and in no way other than that he had given G. H. authority as his agent to use the avails of the sales of the goods to purchase new ones to replenish the stock, and had given him general authority to sell the goods.

2d. B. F. never received any of the goods or the avails thereof, nor any pay for the same, except the Powers' chairs spoken of in his deposition, and the two notes of Wm. M. Weeks for $1400 and $602.95 also spoken of in the same deposition, and there was no evidence tending to show that B. F. had called upon his agent G. H., to account for said goods or the avails thereof.

3d. In relation to G. H.'s taking the whole use of said property to himself, I find that he used it in the manner stated in the report. I am not aware of any evidence that would tend to vary the statement in the report in respect to that feature of the case, unless it be that B. F. had given G. H. the general authority above stated ; and then G. H. went on with the managment of the business without consulting B. F., and sold to plaintiff without the knowledge of the latter, that he was going to make that particular sale or any sale to plaintiff, and that B. F. did not know of the sale to plaintiff until he learned that it had been made some time after it was closed, as stated in his deposition.

4th. The notes so taken of plaintiff in payment for the goods, remained in the possession of G. H. until after this suit was commenced.

5th. There was no evidence tending to show that B. F. ever saw the invoice of the goods to him until after this suit was brought.

6th. There was no evidence tending to show that B. F. ever called for the invoice, notes, or pay on them.

The substance of what appeared, was, that B. F. appointed G. H. his agent to manage the whole matter, and gave him general authority to do so, and gave no personal attention to the matter himself.

The deposition of B. F. Weeks contains the substance of all the evidence relating to the subjects referred to in this amendment.

DECLARATION.

With force and arms, etc., broke and entered the store of the said Wm. M. Weeks, situate and being in Lyndon aforesaid, in county aforesaid, and stayed and continued in said store, though requested to leave and forbidden to touch or intermeddle with the goods therein, for a long time, to wit: for the space of forty-eight hours, and during the said time made a great noise and disturbance, * * locked up the same and interrupted plaintiff in his business, wrenched and forced open the drawers, chests and boxes of goods of the said Wm. M. Weeks, in his said store, and tossed about, broke, damaged and spoiled the goods and chattels of the said Wm. M. Weeks, of the value of five thousand dollars, then and there found; and turned the said plaintiff out of his said store, and locked the same against him, and broke up his business as a merchant, whereby the said plaintiff was put to great trouble, inconvenience and expense, and by means of which the plaintiff was greatly harassed, perplexed and troubled, and suffered an especial loss of, to wit: two thousand dollars, by the interruption of his business alone, and then and there did other wrongs to the said W. M. Weeks.

Also in a further plea of trespass for that the said Loren Prescott and William H. Preston, defendants, on the 31st day of July, A. D., 1877, at Lyndon, in the county of Caledonia, with force and arms, took and carried away certain goods and chattels, to wit:

(Here follows list of goods taken.) To the damage of the plaintiff, five thousand dollars.

'" 18, B 4 " was the report of the clerk of the United States Court, to the court, that the requisite number of creditors, and in amount, had accepted the proposition to pay 25 per centum, &c. " 18, B 5 " contained the order of said court, calling a meeting of the creditors to see if they would accept the offer of twenty-five per centum.

" 18, B 1," " 18, B 2 " and " 18, B 3," are as follows:

"18, B 1." IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT.

*In Re* G. H. & J. M. WEEKS, Bankrupts.

1875. June 23, 11 A. M. Filed petition of John G. Morse & als., Schedules A & B & als., and deposited $55.

June 23, 11 A. M. Filed petition of G. H. & J. M. Weeks for a composition meeting, and offer for a composition.

June 2, P. M.   Filed order for meeting of creditors at the office of J. L. Edwards, Register, in Newport, Vt., July 10, 1875, at 10 A. M.

June 25.   Sent notices to all creditors in accordance with above order.

July 13, 10 A. M.   Filed four composition papers and powers of attorney, register's report of composition meeting and composition resolutions, and all papers returned to court.

\*       \*       \*       \*       \*       \*       \*       \*       \*

(Certified.)

"18, B 2."   UNITED STATES DISTRICT COURT, DISTRICT OF
VERMONT, ss.

In the matter of
  G. H. & J. M. WEEKS, ⎫
  GEORGE H. WEEKS & ⎬ In Bankruptcy.
  JOHN M. WEEKS, ⎭
alleged bankrupts,

*Resolved*, That the proposition of the said firm of G. H. & J. M. Weeks for a composition with their creditors, by which they shall pay their several creditors as their respective claims twenty-five per cent. thereof, in full satisfaction and discharge thereof, said amount of 25 per cent. to be paid in cash on demand as soon as possible after this resolution shall have been confirmed by the requisite number and amount of the creditors of said firm, and recorded by the order of this court, be and the same is hereby passed, accepted, ratified and confirmed; also,

*Resolved*, That said firm may sell, assign, pledge or mortgage any and all of their assets for the purpose of raising said twenty-five per cent.

(Signed by the creditors.)

"18, B 3."   UNITED STATES DISTRICT COURT, DISTRICT OF
VERMONT, ss.

In the matter of
  G. H. & J. M. WEEKS, ⎫
  GEORGE H. WEEKS & ⎬ In Bankruptcy.
  JOHN M. WEEKS, ⎭
alleged bankrupts.

*In Re* COMPOSITION WITH THE CREDITORS OF SAID FIRM OF
G. H. & J. M. WEEKS.

At Burlington, in said district, this 27th day of July, A. D., 1875.

This court, upon due notice to all the creditors of said firm, and upon hearing, had, in pursuance of said notices, having found and being satisfied that the creditors of said firm have, in the manner directed by the 17th section of the act to amend and supplement an act entitled "an act to establish a uniform system of bankruptcy throughout the United States," approved March 2d, 1867, and for other purposes, passed a resolution that the composition which was proposed to them by said firm,

by which said firm shall pay its creditors, in full satisfaction and discharge of their several claims against them, twenty-five per centum thereof payable in money (cash) as soon as possible after said resolution shall be ordered to be recorded, shall be accepted in full satisfaction of the debts due them from said firm. And being further satisfied, and having found that the said composition is for the best interest of all concerned, *ordered*, that the statement of debts and assets furnished by said firm of G. H. & J. M. Weeks to their creditors, to wit: The copies of the schedule filed in court in this case and the ensealment thereto be filed, and that said resolutions and compositions be recorded, and that said twenty-five per centum be paid within ninety days from this date.

D. A. SMALLEY, Judge.

(Certified copy.)

The following paper, marked " L.," was signed and sealed by the creditors :

We, the undersigned creditors of G. H. & J. M. Weeks, hereby acknowledge we have received twenty-five per cent. (25) upon our several claims, as are according to their composition resolutions and the order of court issued thereon, and in consideration thereof we do hereby release and discharge said firm and each member thereof. Witness our hand and seal each adopting a common seal this twenty-first (21st) day of October, A. D., 1875.                                        [Seal.]

*A. M. Dickey* and *Geo. W. Cahoon*, for the plaintiff.

1. The first was a *judicial* sale. *Gates* v. *Gaines*, 10 Vt. 346 ; *Austin* v. *Soule*, 36 Vt. 645 ; *Kelly* v. *Hart*, 14 Vt. 50 : *Bates* v. *Carter*, 5 Vt. 602 ; *Hill* v. *Kendall*, 25 Vt. 528 ; 16 Vt. 617 ; *Gleason* v. *Briggs*, 28 Vt. 135 ; Roberts' Dig. 625, ss. 194–5–8 ; Bump, 171, (9 ed.) ; 1 B. R. 481–2. There was a complete change of possession of the goods. *Bailey* v. *Quint*, 22 Vt. 474 ; *Hammond* v. *Plimpton*, 30 Vt. 333 ; Roberts' Dig. 625, ss. 155. Taking a lease of the store ; the assignment of the policy of insurance ; buying goods in his own name ; opening new books ; the record of the lease—these are all acts indicating open, notorious and exclusive possession. *Stanley* v. *Robbins*, 36 Vt. 422 ; Roberts' Dig. 619, s. 162 ; *Hall* v. *Parsons*, 17 Vt. 272 ; *Rothchild* v. *Rowe*, 44 Vt. 38.

3. Defendant Prescott, after signing the paper marked " L ," is estopped from claiming the first sale void. *Soper* v. *Frank*, ·47

Vt. 368; *Hicks* v. *Cram*, 17 Vt. 455; *R. R. Co.* v. *Langdon*, 45 Vt. 137; *Shaw* v. *Beebe*, 35 Vt. 208; Roberts' Dig. 268, ss. 53, 54, 52.

4. Exemplary damages should be allowed. *Devine* v. *Rand*, 38 Vt. 621; *Ellsworth* v. *Potter*, 41 Vt. 685; *Edwards* v. *Leavitt*, 46 Vt. 126; *Hoadley* v. *Watson*, 45 Vt. 289; *Earl* v. *Tupper*, Ib. 275; Roberts' Dig. 223, ss. 25–28–21; *Keenan* v. *Cavenaugh*, 44 Vt. 268.

*Belden & Ide*, for the defendant.

Until an adjudication of bankruptcy a debtor may, in a voluntary case, withdraw his petition. *Wright* v. *Johnson*, 4 Bankrupt Reg. 627; 8 Blatchf. 150. Until an assignee is appointed, and the conveyance or assignment is made to him, the title to the property remains in the bankrupt. 11 B. R. 472; 22 Wallace, 283.

There is no evidence, either direct of inferential, that either any adjudication of bankruptcy was had, or any petition for any such purpose ever filed ; but there is evidence conclusive, found in 18, B 1 (which contains the docket entries), that the petition which brought the matter into court was one for a " composition meeting and containing an offer for a compromise," and that all that was done thereafter was under that petition.

Another conclusion is quite as apparent ; and that is, that a judicial sale of the property involves as a prerequisite, the possession of the same by the court at the time of the sale, and the act of selling must be done by the court's agent under its special direction, and afterward approved by the court. Rorer on Judicial Sales, ss. 1 to 5, inclusive.

We also contend that the relation of the debtors to each other was wholly unaffected by the bankruptcy.

Their petition, as before stated, was preferred to secure the aid of the court in bringing about a compromise or settlement with their creditors, and had not in contemplation any of the results that would ensue from an adjudication of bankruptcy.

Neither the fact that they were insolvent, nor the petition, would operate as a dissolution of the partnership. *Arnold* v. *Brown*, 24 Pick. 89, and cases there cited.

2.  There is an absence of all those conditions which character-ize a sale accompanied by a substantial and visible change of possession, so as to deprive the vendor of the ability to secure an undeserved credit; not only this objection but the additional one that there is a beneficial use of the property secured and enjoyed by the vendors.

And this objection attaches not only to the property originally sold, but as well to all property bought with the avails of the sales, for the reason that the purchaser never had any better pos-session of the avails than of the property itself. *Mills* v. *Warner*, 19 Vt. 609; *Ridout* v. *Burton*, 27 Vt. 387; *Flanagan* v. *Wood*, 33 Vt. 332.

*Edwards & Dickerman*, for the plaintiff.

Section 17th, Act June 22, 1874, says STEWART, J., in *Deford, et al.* v. *Hewlett*, in the Court of Appeals, in Maryland, 18 B. R. 518, "The composition is an incidental proceeding in bank-ruptcy." Proceedings in the Court of Bankruptcy commence upon the filing of the petition for an adjudication in bankruptcy, either by the debtor in his own behalf, or by a creditor against him. The jurisdiction in that court is exclusive over matters of bank-ruptcy. That subject by the constitution has been confided to the Federal authority. When that court has acquired jurisdiction it is not suspended by the proceedings for composition.

In this condition of things, says STEWART, J., in the case above cited, it is quite clear that the appellants have no right to resort to the courts of the State, for the recovery of their claims, nor to invoke their authority for the redress of their alleged grievance. *Miller* v. *McKenzie*, 13 B. R. 496.

Says BOWIE, J., in the last named case, "there is not, in this case, any assignee to represent the debtor in the attachment suit, or to claim the property attached, or its proceeds, by virtue of the assignment. But the same reason which compels the state courts to recognize the authority of the courts in bankruptcy, in cases of assignment, to wit: The exclusive jurisdiction of those courts in matters of bankruptcy, must compel the state tribunals to respect the composition of creditors, adopted under the sanction

of the courts of bankruptcy, in conformity with the provision of the bankrupt law."

The property attached by the defendants, which was the property of the bankrupts when the petition was filed, was in the legal custody of the District Court, under the proceedings in bankruptcy, and entirely subject to the order of that court and held for the benefit of all the creditors, as the court might see fit to dispose of it, and could not be taken from the jurisdiction of the District Court on process issuing from a state court. *Byrd, Assignee, etc.* v. *Harrold et al.,* 18 B. R. 433.

Says ERSKINE, J., in this case, "the moment Usry filed his voluntary petition to be declared a bankrupt, all the property, in possession or in action, which he included in his inventory and schedule, came by the effect of the bankrupt law, under the prehensory power of this court as fully as if it was in the actual and visible presence of the court; consequently, it is under its protection and within its exclusive control. And this construction of the statute is well settled by numerous unshaken decisions of the Federal Courts. *Buck* v. *Colbath,* 3d Wall, 344; *In Re Henry Vogel,* 2 B. R. 427; *In Re Enoch Stedman,* 8 B. R. 319; *Hutchins* v. *Muzzy Iron Works,* Ib. 458; *Lamp Chimney Co.* v. *Brass & Copper Company,* 20, 656.

"This being so, any interference, by instituting suit in state tribunals to affect the property, or by levying on it, seizing it or in anywise interfering with it by state court processes, except by permission of the Bankrupt Court, is a direct infraction of its authority, and violation of the law.

"When this court declared Usry a bankrupt, the judgment was in the nature of a decree, *in rem.* as to the status of property returned to his voluntary petition, and was notice to all the world."

Bankrupt courts will not discontinue proceedings in bankruptcy, until the composition is fully performed. *In Re McNabe & Harlin Mnf. Co.,* 18 B. R. 388.

The opinion of the court was delivered by

ROYCE, J. It is claimed that the goods sought to be recovered for in this action were purchased by B. F. Weeks at a judicial

sale, and hence that no change of possession was required, to protect them from attachment by the creditors of the former owners. The U. S. statute, approved June 22, 1874, amendatory of the bankruptcy act of 1867, under which the composition proceedings, referred to in the report, were instituted, and carried on, provides that in all cases of bankruptcy, then or to be thereafter pending, by or against any person, whether an adjudication in bankruptcy shall have been had or not, the creditors of such bankrupt may in the manner prescribed by that statute, by resolution, accept such proposition of compromise, as the bankrupt has submitted to them for their action, and such resolution, when approved by the court and recorded, is made binding upon the creditors and the bankrupt. After any such resolution has been recorded, the court has no other right of control over the assets of the bankrupt than to see that they are disposed of for the benefit of the creditors, in order that they may realize the amount agreed to be paid them by the compromise resolution. The compromise resolution in this case provided that the bankrupts might sell, assign, pledge or mortgage, any and all of their assets for the purpose of raising the twenty-five per cent. which was to be paid to the creditors. By the adoption of the resolution the creditors waived or surrendered whatever right they had to have the assets disposed of by the court, and conferred that right upon the bankrupts, so that the sale made by the bankrupts to B. F. Weeks, was made by them as owners, and under the right given by the resolution, and not as officers of, or under any authority of the court. It was not in any legal sense a judicial sale, and its validity, as against attaching creditors of the parties making it, is governed by the same rules that would control, if no proceedings in bankruptcy had been pending.

The first question to be considered, as affecting the validity of the plaintiff's title to the goods declared for, is as to the legality of the sale of the goods by G. H. & J. M. Weeks to B. F. Weeks. The referee has found that that sale was for a full consideration ; and when B. F. Weeks paid the money for the goods he supposed it was to be used in paying the creditors the twenty-five per cent. agreed to be paid by the compromise resolution ; and that the

debts of G. H. & J. M. would all be extinguished. The sale, then, not being fraudulent in fact, was it fraudulent in law ? This depends upon whether there was such a possession taken and retained by the vendee, that he could maintain his title against an attaching creditor of the vendor. It has been invariably held in this State that such possession must be open, notorious, and exclusive ; and that where the possession taken was wanting in any of those requisites, the property remained liable to attachment by the creditors of the vendor, notwithstanding the *bona fides* of the transaction between the vendor and vendee. The rule was founded in public policy, and was designed to prevent secret and collusive transfers of property, and the procurement of credit upon an apparent ownership. In all the reported cases, it has been steadfastly adhered to, and the contention has been whether the evidence in the cases that have arisen has brought them within that rule. The possession taken, must be open, and notorious ;— that is, it must be apparent, and such as would indicate to an observer a change of ownership ; and the fact, as to who is controlling and managing the property, is important to be considered in determining that question. The possession must be exclusive. If the possession is a joint one by the vendor and vendee, it is not such a possession by the vendee as the law requires.

Was there such a possession taken and retained by B. F. Weeks ? It is found that the goods had been moved from the store which had been used by G. H. & J. M., into the store where they were at the time the attachment was made, before they were purchased by B. F. Weeks; and it does not appear that the title or right of possession of that store had ever been transferred to B. F. Weeks. He never saw the goods after his purchase, or assumed any personal control over them. G. H., assisted by the plaintiff, commenced selling the goods and replenishing the stock as the trade required, and conducted the business of the store substantially in the same manner that it had been conducted by G. H., before the sale to B. F. was made. There is no fact found that would indicate to an observer judging from appearances that there had been any change in the ownership of the goods. As far as the apparent ownership was available to G. H. as a means

of procuring credit, it was just as available after the sale as before; and the fact, that he was acting as the agent of B. F. in what he did, taken in connection with his previous ownership of the property and the other facts which have been alluded to, does not aid the title of B. F. against the claim made that it was fraudulent in law.

The parties do not seem to have attempted to make any change in the possession of the goods, or to have thought that any such change was necessary; and the explanation of their conduct may be ascertained from the fact found, that B. F. supposed that the money he paid for the goods was to be appropriated to the payment of the debts of the vendors, and that thereby their debts would all be extinguished,—making it unnecessary to anticipate and provide against any attachment of the property by creditors of the vendors. The possession of B. F. was at best but a joint possession with the previous owners; so that the possession of B. F. was not such as the law requires to enable him to maintain his title to the goods against attachments of the same by creditors of the previous owners. The cases that are referred to in Roberts' Digest under the title of " Validity of Sales against Creditors," are full authority for this holding.

This brings us to a consideration of the title of the plaintiff. G. H. Weeks, as agent of B. F., and by virtue of the general authority that he had to sell the goods, made a sale of them to the plaintiff on the 15th day of January, 1877. The transaction of the sale is found to have been fraudulent as between G. H. Weeks and the plaintiff; but if that fact would not invalidate the sale, and conceding that the plaintiff by virtue of it acquired all the title that B. F. had, can he maintain his title as against the defendants ?

B. F. by virtue of his purchase acquired a title subject to be defeated by a determination that it was fraudulent in law; the plaintiff by his purchase acquired that title; so that the goods were as much subject to attachment after they were purchased by the plaintiff as they were before the sale to him, unless he took such possession of them that his purchase would not be fraudulent in law. Do the facts found show that the plaintiff's possession of

the goods was open, notorious, and exclusive ? The fact that the plaintiff took a lease of the store tends to show that it was, but is not conclusive.

Where the purchaser of personal property acquires the title to the land upon which it is situate, he is considered so far in possession as to obviate any necessity for its removal to any other place; but where he permits the former owner to remain upon the premises, and control and manage the property as he did before making the sale, the acquisition of the title, and the constructive notice given by the record, have never been held sufficient to protect the property from attachment by the creditors of the vendor. The taking a transfer of the policy of insurance was a transaction between the parties to the policy and the plaintiff, and would not indicate to any one else that the property had been transferred to the plaintiff. So the opening of books of account by the plaintiff in his own name, and the purchasing goods, and having them sent in his name, tend to show that his possession was sufficient. But the facts, that the apparent possession to common observers did not indicate a different possession of the goods, after the sale from that which had been had of them before, except in the particulars before named; that G. H. Weeks continued in the control and management of the goods apparently as before the sale; that the plaintiff continued to board in the family of his father as before; and that the goods remained in the same store, in our judgment outweigh all the facts relied upon by the plaintiff to show that he had a title to the goods, as against this attaching creditor. The defendants had the right to attach the goods that were sold by G. H. Weeks as the agent of B. F. Weeks to the plaintiff. The after-acquired goods the defendants had no right to take.

The sale to B. F. Weeks, as we have seen, was not fraudulent in fact, so that he had the right to dispose of the goods, and receive and hold the avails. B. F. Weeks has so far affirmed the sale, made by his agent to the plaintiff, that he is estopped from claiming that the plaintiff did not have the same rights after the sale to him, so that the avails for goods sold by the plaintiff would belong to him, and if he purchased goods with such avails, the

goods so purchased would belong to him, and were not subject to attachment by the creditors of G. H. & J. M. Weeks, even though they were intermingled, as the referee has found, with the goods that once belonged to G. H. & J. M. Weeks. If the sale to B. F. Weeks had been fraudulent in fact, probably a different rule would have prevailed.

The referee should have found the fact whether the sales made to B. F. Weeks and the plaintiff were fraudulent in law or not; but instead of that, he has reported the facts found by him, which constitute the evidence upon which the fact must be found. Neither party has expressed a wish to have the report recommitted for any further findings, and we have concluded to dispose of the case upon the report as submitted.

The result is, that the *pro forma* judgment is reversed, and judgment for the plaintiff for $610.50, and interest thereon since June 1st, 1879, as a part of his damages and his costs. The claim of the plaintiff on account of interruption of his business and loss of credit is wholly disallowed.