AARON V. BURNELL *et al.*, plaintiffs in error, *v.* DANIEL M. ROBERTSÒN, defendant in error.

### Error to Marshall.

Where two sales of personal property have been made, both equally valid, his is the better right who first obtains possession of the property.

An attaching creditor stands in the light of a purchaser, and as such is to be protected.

Where personal property was sold at private sale, the property being at a distance from the place of sale, and was subsequently attached by a creditor of the vendor, and before it was taken into possession by the purchaser, it was held to be subject to the attachment.

REPLEVIN, in the Marshall Circuit Court, brought by the plaintiffs in error against the defendant in error, and heard before the Hon. John D. Caton and a jury at the March term, 1848, when a verdict and judgment were rendered for the defendant.

The particular instruction to the jury excepted to, is recited in the Opinion of the Court.

*E. N. Powell*, for the plaintiff in error, filed the following argument in writing:

The only question to which I shall call the attention of the Court, is the instruction given by the Court.

The proof, as appears by the bill of exceptions, shows that O. Hinton & Co., the former owners of the property in question, on the 10th of February, 1847, made an absolute bill of sale of all the property owned by the company on the different lines of mail routes in the States of Illinois, Iowa, and Wisconsin; that this sale was made in St. Louis, Missouri; that the vendees, by the terms of sale, were authorized to take possession of all the property sold; that immediately after the execution of the said instrument, the plaintiffs by their agents, started on the line, taking possession of the property as they went along; that they arrived at Peoria on the 13th of February, in the night, and immediately proceeded on the line of the route to Lacon, where they found the property attached.

The question of law involved in this case is, whether there

was such a transfer of the property in this case as would defeat an attaching creditor levying before it was reduced into the actual possession of the vendee.

It is a general rule, that in a sale of personal property, there must be a delivery as to the subsequent purchasers, or attaching creditors. But it is also well settled, that where goods are sold, and from their condition no actual delivery can be had, the sale is valid if the vendee take proper measures to obtain the possession of the property sold without unnecessary delay. *Ricker* v. *Cross*, 5 New Hamp. 570; *Whipple* v. *Thayer*, 16 Pick. 25; *Truxworth* v. *Moore*, 9 do. 347; *Jewett* v. *Warren*, 12 Mass. 300; *Rice* v. *Austin*, 17 do. 197; *Badlam* v. *Tucker*, 1 Pick. 389; *Damon* v. *Osborn*, ib. 476; *Chaplin* v. *Rogers*, 1 East, 192.

The cases of *Rice* v. *Austin*, 17 Mass. 197, and of *Chaplin* v. *Rogers*, 1 East, 192, are directly in point. The Court in the former case said: "It is not necessary to effect the transfer of bulky articles that there shall be a manual delivery of them. The delivery of things which may be considered as the proper *indicia* of the property is sufficient. And in the case at bar, the fact of possession may be inferred from the plaintiff's undertaking to deal with the propty as his own, by the indorsement upon the bill of lading."

The same principle is decided in the latter case, which was *assumpsit* for a stack of hay. The plaintiff was put to the proof of the delivery of it, which he maintained by showing that the defendant had sold a part of the hay to one who had taken it away.

The case in Massachusetts was an action of trespass against a sheriff for taking property on an attachment issued against the vendor, and in this respect is precisely like the present case.

The proof, then, is clear that at the time the property was sold, it was impossible to take actual manual possession, and that the plaintiffs used all reasonable diligence to take actual possession. This was sufficient to pass the title in them.

In the case in New Hampshire, which was an action of trover for a chaise and harness, attached by a sheriff, it appear-

ed that A. assigned to B., among other things, a chaise and harness, which at the time were at a distance, in the possession of C. Before B. could obtain possassion, and while the chaise and harness were in the possession of C., D., a sheriff, by virtue of a process against A., attached the same. It was held that the assignee was entitled to hold the same against the sheriff. The Court there say : " An actual delivery by the vendor to the vendee is not in all cases necessary. It is enough if the delivery be such as the situation of the property admits. " It is added, further, that " when the chattels sold are so situated that there can be no delivery at the time of the sale, the case forms an exception to the general rule, and it is sufficient, if the vendee, without any gross laches, take possession, and assert his title in a reasonable time after he has an opportunity to take possession. "

*H. O. Merriman* also filed a written argument in behalf of the plaintiffs in error.

*O. Peters*, for the defendant in error.

It is conceded that O. Hinton & Co. were the owners of the property in controversy till February 10, 1847. It is also conceded by the defendant, that the bill of sale of that date, was sufficient to pass the property as between vendor and vendee. But, as between the vendors and their creditors, we insist there was no sufficient delivery of the property.

It is admitted in the argument for the plaintiffs, that there was no actual delivery by them to their vendees. Nor is it contended, that there was any delivery of one article of the property sold, in the name and in behalf of the whole; but there was, at most, an authority given by the bill of sale to the vendors to take possession; and the case shows that all the possession taken by the plaintiffs of the property was taken, not by virtue of a symbolical delivery, but by virtue of the authority contained in the bill of sale to take possession. This, it is admitted, is sufficient so far as the plaintiffs

actually got possession before the seizure upon the attach-
ment.   Here it is not pretended there was any symbolical
act as a substitute for a delivery of the whole.   Even the
bill of sale was not delivered as a symbol, but merely as a
bill of sale, with an authority to take possession.

This, we insist, was not a sufficient delivery to defeat the
attachment.   Aside, then, from any question as to the *bona
fides* of the transaction between the parties to the bill of
sale, we insist, that the rights of the attaching creditors
vested by their attachment.   A leading case on this subject
is that of *Lanfear* v. *Sumner*, 17 Mass. 110.

In *Shumway* v. *Butler*, 7 Pick. 56, where a bill of sale
of property was made of property two miles distant, and an
attachment levied after the delivery of the bill of sale, and
before possession taken of the property, it was held that the
attachment was good.   See, also, *Lamb* v. *Durant*, 12
Mass. 57.

In *Carter* v. *Willard*, 19 Pick. 1, where there was a bill
of sale without a delivery of all the property, it was held that
the part attached before a delivery of that part, was good
as against the vendee.   So in *Williams* v. *Moore*, 5 New
Hamp. 235, it was held that a delivery of part of the prop-
erty in one place, would not operate as a delivery of another
part in another place.   See, also, *Gardner* v. *Howland*, 2
Pick. 603; *Shurtleff* v. *Willard*, 19 do. 202.   The case at bar
presents a case of a race between creditors.   The law fa-
vors the vigilant; *"leges vigilantibus, non dormientibus sub-
veniunt."*

No wrong is done to other creditors.   It is immaterial
where a debtor's property goes, so that it is applied in pay-
ment of his debts.   If none of it is secreted or misapplied,
the law is satisfied.   All *bona fide* creditors have equal
equities; each has a right to grasp his share, either by pur-
chase or legal process.   In such cases of a race between
creditors, "the race is to the swift."   *Cushing* v. *Hurd*, 4
Pick. 254; *Worden* v. *Adams*, 15 Mass. 223.

As to the knowledge of these attaching creditors of the
sale of O. Hinton & Co. to the plaintiffs, the most that can

be said is, that the evidence was doubtful and uncertain, and proper for the jury to consider, and they having passed upon it, the Court will not interpose to disturb the verdict.

We might well question the *bona fides* of this sale to the plaintiffs, resulting from an inspection of the bill of sale itself. A conveyance of such a large amount of property without valuation, purporting to be in payment of a large amount of debts and liabilities, which debts and liabilities are specifically stated, and yet all, or nearly all of which are stated in round numbers, by hundreds and by thousands, cutting off all other creditors, reserving to them no surplus, and requiring no obligation from them to pay and discharge the debts for which they were sureties, are circumstances which might well excite suspicion; and show, at least, that the Court ought not to interfere, unless peremptory and arbitrary rules of law require it.

But the authorities cited on the other side to show that the property was so far delivered as to avoid the attachment, fail entirely, with one exception, of sustaining the point for which they are cited.

They are all clearly distinguishable, unless it be that of *Ricker* v. *Cross*, 5 New Hamp. 570. The Court here overrule the case of *Lanfear* v. *Sumner*, but entirely disregard the distinction of goods and vessels at sea. Yet that distinction is well maintained by the authorities, and there is strong reason for the rule. Without this distinction, the commerce of the country would be embarrassed.

Had an innocent purchaser bought this property of an agent of O. Hinton & Co. without knowledge of the contents and execution of the bill of sale, and before its delivery, can it be doubted but such purchaser would have holden it?

This is really a contest between two sets of creditors. The officer is merely an instrument by which one set of those creditors is to enforce their rights. This doctrine has been fully recognized by this Court. The whole case, therefore, must depend upon the fact whether there was a sufficient delivery of the property, taking into consideration the acts of the parties, and the terms of the bill of sale.

The Opinion of the Court was delivered by

TRUMBULL, J. This was an action of replevin, in which the question involved was the title to the property replevied, consisting of a number of stage horses, their harness, &c. O. Hinton & Co., mail contractors, were the former owners of the property, and on the 10th day of February, 1847, at St. Louis, conveyed it and a large quantity of other property upon different stage routes in Illinois, Iowa and Wisconsin to the plaintiffs as creditors, who, immediately after the execution of the bill of sale, proceeded as fast as practicable to take possession of the property conveyed; but before they had taken the possession of the property in question, which was upon the stage route between Peoria and Ottawa, it was seized in the county of Marshall by the defendant, on the 14th of February, 1847, as an officer, under various writs of attachment sued out in said county of Marshall against O. Hinton & Co.

Upon the trial in the Circuit Court on an issue of property in the plaintiffs, the Court instructed the jury as follows, to wit: " If either of the attachments were levied before the property was taken into actual possession of the plaintiffs in this suit, or their agents, the property was liable to such attachment, unless the attaching creditor knew of the transfer of the property to the plaintiffs, in which case it was not so liable, provided the transfer of the property is proven by the bills of sale. " The plaintiffs excepted to so much of this instruction as related to the delivery of the possession of the property attached, and the necessity of notice to all the attaching creditors. The jury found a verdict for the defendant, whereupon the plaintiffs moved for a new trial, which was denied, and an exception taken.

The refusal to grant a new trial is assigned for error, and it is insisted that the fair inference from the evidence is, that the attaching creditors had notice of the transfer of the property to the plaintiffs at the time of the levy of said attachment. If the testimony shows that said creditors had notice, the verdict was erroneous, but it is clear that notice to at least one of the attaching creditors was not positively

shown, and the jury were justified by the evidence in find-ing, as they did, that he had no notice, and the Court did not consequently err in refusing to set aside the verdict upon that ground. Whether those creditors, when attachments were not levied until after they had notice of the transfer of .the property, can gain any advantage by the previous levy of an attachment upon the same property by a creditor who had no notice, is a question not now before us. The officer is protected if he had in his hands a single writ that would justify his taking and detaining the property, although he may, at the same time, have been in the possession of an hundred other writs that would have afforded him no justifi-cation for the act.

The main question in the case, however, is, whether an actual delivery of the property was necessary to vest the title in the plaintiffs, so as to protect it against the other creditors of O. Hinton & Co. The contest is really between different creditors of that firm, the plaintiffs claiming the property by virtue of the sale, and the attaching creditors by virtue of the legal proceedings they had instituted, under which the officer in their behalf got possession of the prop-erty before it was delivered to the plaintiffs.

The general rule that in the sale of personal chattels there must be a delivery of possession as to subsequent *bona fide* purchasers or attaching creditors is admitted, but then it is insisted that such a delivery only is necessary as from the nature of the case can be made, and that inasmuch as the property conveyed in this case. was scattered over a large extent of country, and the plaintiffs were proceeding with all reasonable dispatch to get possession, that therefore it forms an exception to the general rule and the sale is valid. To sustain this view of the case, we have been referred to numerous cases where a symbolical or constructive delivery has been regarded as equivalent in its legal ·effects to an actual delivery. Such are the cases where the key of the warehouse containing the goods sold was delivered to the vendee, or where the documentary evidence of the title has been delivered, as in the case of a ship or goods at sea, or

where the weight and magnitude of the article has rendered any other than a constructive delivery impossible, as where the possession of a column of granite or a raft of logs was held to be taken by the eyes and the declared intention. But none of these cases are like the one at bar. Here there was no documentary evidence of title to the articles sold, to be transferred, nor was the property at sea one of such a character as to render an actual delivery impracticable.

The only obstacle to a delivery in this case was the absence of the property to be delivered. There was no evidence of a delivery of any portion of the property conveyed at the time of the sale, and hence it cannot be insisted that a part was at that time delivered in the name of the whole.

The bill of sale authorizes the plaintiffs to proceed along the various mail routes and *take possession* of the property sold, in whose soever hands it might be found. It is manifest from this clause in the bill of sale, that the parties themselves considered some other act necessary than the execution of the writing to vest the property absolutely in the plaintiffs. Suppose an agent of O. Hinton & Co. at Lacon, who had possession of the property attached and authority to dispose of it, had made sale of the same to a *bona fide* purchaser on the day after the bill of sale was executed to plaintiffs at St. Louis. Could it be insisted that the purchaser acquired only a title subject to be taken away by a previous purchaser from the principal in another part of the country? We think that such is not the law, but that in case of two sales of personal property, both equally valid, his is the better right who first gets possession of the property, and the attaching creditor stands in the light of a purchaser and is to be protected as such. *Martin* v. *Dryden,* 1 Gilm. 188.

The only case to which we have been referred that at all conflicts with the foregoing views is that of *Ricker* v. *Crow,* 5 N. H. 570. In that case, one Whitehouse being indebted to the plaintiffs, transferred to them for their benefit as creditors a chaise and harness and various other articles of personal property. Previous to the transfer, the chaise and

harness had been let to hire and was then at a distance, but the *rest of the property was delivered in the name of the whole.* Before the plaintiffs obtained actual possession of the chaise and harness, and while it was in the hands of the bailee, it was attached at the suit of various creditors of Whitehouse, and the Court held that the chaise and harness were not liable to the attachment. There is a distinction, however, between the case of Ricker and the one at bar, in this, that in the former, a part of the property and all that was accessible was actually delivered at the time of the sale, in the name of the whole; but the case itself is of doubtful authority, and is admitted by the Court to be in conflict with some other cases.

The cases of *Rice* v. *Austin*, 17 Mass. 197, and of *Chaplin* v. *Rogers*, 1 East, 192, have been much relied upon, but they are not like this. In the first of those cases, the documentary evidence of title (the bill of lading) was in the possession of the plaintiff, and he had undertaken to deal with the property as his own, by the indorsement of the bill of lading before the levy of the attachment, and besides, the transfer of a ship or goods at sea is admitted to form an exception to the rule requiring an actual delivery of personal property to vest the title in the vendee; and in the case in East, the vendee had exercised acts of ownership over the property, a stack of hay, by selling a part of it which had been taken away. Had the plaintiffs in the case now before us been able so far to get possession of the property as to have exercised acts of ownership over it before the levy of the attachment, their title would have been undoubted; or had notice been given to the driver or agent who had the property in possession, and he had agreed to hold the same for plaintiffs, the delivery would have been sufficient. But it would be going too far to hold that the title to personal property situated at a distance from the place where the sale is made, passes absolutely to the vendee without a delivery so as to defeat the title of a subsequent *bona fide* purchaser who first gets possession of the property. Such a rule, it seems to us, would operate most injuriously upon the trade

and commerce of the country, as a person could never be safe in the purchase of personal property if his title was liable to be defeated by a prior sale of his vendor, made in some remote part of the country. If either purchaser is to suffer in such a case, it ought to be the one who purchased the property, knowing it to be at a distance and that possession could not be obtained at once, rather than the one who sees and takes possession of the property at the time of the sale. The former knows the risk which he runs of not being able to get possession of the property before it may be sold and delivered to another, while the latter can never know whether the property may not before have been traded to some one who has been unable at the time to receive it. Possession of personal property has always been regarded as evidence of ownership, and public policy requires, that while personal chattels remain in the possession of the former owner, they should as to third persons be regarded as his.

A reference to a few authorities analogous in principle to the case before us, will be sufficient to show that a sale of personal property without delivery is insufficient to vest the title as against any one but the vendor. In the case of *Whitney* v. *Lynde,* 16 Verm. 579, it was held that where personal property is sold, which is at the time in the possession of a third person, it will be subject to attachment at the suit of the creditors of the vendor, unless the person having possession be notified of the sale and agree to hold the property for the vendee.

In the case of *Cobb v. Haskell,* 14 Maine, 303, where a bill of sale was made of a quantity of boards to secure a debt due, and the vendor pointing toward the boards which lay in several piles in a lumber yard in sight, said to the vendee, there are your boards, take care of them and make the most of them; and the vendee suffered them to lie in the same place for two months without any further act on his part, when they were attached as the property of the vendor, it was held that there was no sufficient delivery as against the attaching creditor.

The case of *Lanfear* v. *Sumner*, 17 Mass. 110, is directly in point. In that case, one Waln who was the owner of a quantity of teas which had been shipped at Canton for Boston, being at Philadelphia, sold said teas to Lanfear, not knowing at the time whether they had arrived at Boston or not, and having no bill of lading or documentary evidence of title, he gave Lanfear a written transfer of the teas, which the latter transmitted by due course of mail to his agent at Boston, who, within a half hour after its receipt, made a demand of the teas which had arrived at Boston a few days previous and been seized by the defendant, Sumner, as an officer under an attachment at the suit of the creditors of said Waln. The attachment had been levied before the receipt of the transfer at Boston, but not till after its execution at Philadelphia, and the Court held the property subject to the attachment. Had the teas been consigned to Waln, and he having possession of the bill of lading had indorsed it to Lanfear, the case would have come within the exception in favor or the sale of goods at sea or in a distant port, the title to which becomes perfect by the transfer of the documentary evidence of title, without an actual delivery. See, also, *Carter* v. *Willard*, 19 Pick. 1, and *Shumway* v. *Ritter*, 7 do. 56, which are analogous in principle to the one at bar.

There being then no error in the instructions of the Circuit Court, the judgment is affirmed with costs.

*Judgment affirmed.*