WILLIAM H. FLANIGAN v. BENJAMIN A. POMEROY.[1]

January 17, 1902.

Nos. 12,821—(165).

**Sale—Change of Possession—Good Faith.**

In an issue of fact tried by the court, where, under G. S. 1894, § 4219, the burden is imposed upon the purchaser of personal property unaccompanied by an actual and continued change of possession to show his good faith, a finding by the trial court of the bona fides of such purchaser is necessary to uphold his title in that respect as against a subsequent innocent purchaser.

**Vendor in Possession after Sale—Purchaser in Good Faith.**

Where a vendor of personal property is allowed by the vendee to continue in possession of the same after the sale, so as to give the world a colorable appearance of continued ownership, the rights of a subsequent bona fide purchaser from the first owner who retains possession will be upheld.

**Findings and Conclusions.**

Findings of fact considered, and *held* supported by the evidence; also that the findings of fact support the conclusions of law by the trial court.

Action in the municipal court of St. Paul to recover possession of a horse, or $500 in case return thereof could not be had. The case was tried before Orr, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Oscar Hallam*, for appellant.

*John Lind* and *A. Ueland*, for respondent.

[1] Reported in 88 N. W. 761.

LOVELY, J.

Action in claim and delivery to recover possession of a valuable horse, the ownership of which is asserted by plaintiff against subsequent purchasers from the first owner. There were two alleged sales of the animal within twenty-four hours,—the first to plaintiff, the second to Carlos Boynton and J. E. Neff. The defendant, a liveryman, is in the case merely as a bailee of the latter parties, under whom he justified his possession. The real contest is, which of the two sales conveyed the ultimate title to the property in question? The case was tried to the court, who made findings of fact in favor of the title of Boynton and Neff, and ordered judgment for defendant. Plaintiff moved for a new trial, which was denied, and the cause comes here by his appeal from that order.

As we conceive our duty on this appeal, it depends solely upon the construction to be given the findings of the trial court, from which it appears that one James Hogan, a resident of Kentucky, had the horse in question at the State Fair Grounds for exhibition on September 6, 1900. Plaintiff called, and expressed a desire to purchase the animal. With reference to the transaction between Hogan and plaintiff, the court made a finding of fact in words as follows:

"That on said date [September 6] the plaintiff purchased said horse from the said James Hogan upon the terms and under the following oral agreement, to wit: The plaintiff agreed to pay and the said James Hogan agreed to accept the sum of $350 as and for the price of said horse, the plaintiff then and there paying the said Hogan the sum of $10 in part payment of the purchase price; that the remaining part of the purchase price should be paid on the following day, and that, until paid, the said James Hogan should retain the possession of the horse."

It may be seriously doubted whether this finding does not embrace such details concerning the retention of the possession of the animal by the owner until payment of the balance of the purchase price as made the sale entirely dependent thereon; but, in view of the obscurity involved in that respect, and also the further view we have reached that the construction of this finding is not decisive of the result, we shall concede, without deciding,

that its effect is in accord with plaintiff's claim, and that there was a complete transfer of the property from Hogan to plaintiff.

It was further found, in substance, by the trial court that on the forenoon of the day following the transaction between plaintiff and Hogan, Boynton and Neff applied to Hogan to purchase the horse, which still remained in the former owner's possession at the fair grounds; that Hogan stated to them that a man from Minneapolis, whose name was not disclosed, had an option to purchase the horse, which would expire at eleven o'clock on that day; that he would hold the horse an hour or so later than eleven o'clock, and, if the purchaser from Minneapolis did not return and take the horse, he would then sell it to them; that later in the day Boynton and Neff again saw Hogan, and were informed by him that the Minneapolis purchaser had not called to exercise his option; also that the time had expired for doing so. This statement was believed by Boynton and Neff, and they purchased the animal for the sum of $425, which they paid to Hogan, who then delivered the horse into their possession, when they left the fair grounds, taking it with them.

It is assumed by counsel for plaintiff that there is no question as to his client's good faith under the facts above found by the court, but, as we construe the findings, we fail to discover upon what plaintiff can rightfully base this assumption. The court did not, as in the case of Boynton and Neff, find upon plaintiff's good faith at all. It is true that it found the apparent terms of the sale were as above quoted, and ordinarily a presumption of the vendor's good faith would follow; but upon this finding every fact stated therein might be existent with an undisclosed fraudulent purpose and bad faith both of Hogan and the plaintiff, for the law in such case does not permit the honest intentions of a vendor who retains possession of the property after sale against his vendee to rest upon the visual conduct of the parties, or the usual presumptions that otherwise would sustain the validity of the transaction.

One of the familiar provisions of the statute of frauds which we have adopted reads as follows:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same is accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the things sold and assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or assignor, or subsequent purchasers in good faith, unless those claiming under such sale or assignment make it appear that the same was made in good faith, and without any intent to hinder, delay or defraud such creditors or purchasers." G. S. 1894, § 4219.

The fact that the court did not find from the evidence in the record that plaintiff was a purchaser in good faith may or may not have been influenced by the application of this statute. Whether it was or not is immaterial, since the failure to find on that question at all, considered in connection with the conclusions that Boynton and Neff purchased in good faith, for value, and took immediate possession of the property, leaves the issue just where it found it, with the statutory presumption to be overcome, and hence requiring an affirmative finding that plaintiff's good faith existed as a fact. If this issue was overlooked in the findings of the trial court, and plaintiff was prejudiced thereby, he should have requested the court to pass distinctively upon it; for if, on review here, findings in a case tried to the court are insufficient, we cannot go into the evidence to find them. Kinney v. Mathias, 81 Minn. 64, 83 N. W. 497.

But, aside from the terms of the statute, it may be said that men commonly act in their daily affairs upon the presumption that goods remaining in the hands of the former owner, with nothing to indicate that the relations of the parties are changed, gives a false and deceptive credit, and puts it in his power to sell them again to an innocent purchaser. This permits innocent purchasers to be misled by apparent ownership of goods where real ownership does not exist through an undisclosed transfer to another. Hence public policy requires that while goods remain in possession of the former owner with the consent of the purchaser they should, as to innocent third persons, be treated as his property. Streeper v. Eckart, 2 Whart. 301; Stephens v. Gifford, 137 Pa. 219, 228, 20 Atl. 542; Allen v. Massey, 17 Wall. 354; Reed v. Eames, 19 Ill. 594;

Ticknor v. McClelland, 84 Ill. 471; Burnell v. Robertson, 5 Gilm. 291; Norton v. Doolittle, 32 Conn. 405, 410; Davis v. Bigler, 62 Pa. 242, 248; Weeks v. Prescott, 53 Vt. 57, 71.

In conclusion we hold that the findings of fact are supported by the evidence, and that under the facts so found the title of Boynton and Neff to the property in dispute must be upheld.

The order appealed from is affirmed.