MARK E. WILSON v. A. PARKER WALRATH.[1]

February 21, 1908.

Nos. 15,527—(235).

**Sale—Statutory Presumption of Fraud.**

A sale of personal property, the possession thereof remaining in the vendor, is, under section 3496, R. L. 1905, presumptively fraudulent and void as against the creditors of the vendor and subsequent purchasers in good faith.

[1] Reported in 115 N. W. 203.

**Presumption of Fraud Overcome.**

This presumption of fraud is overthrown when those claiming under such sale make it appear that the sale was made in good faith and without intent to hinder, delay, or defraud creditors or subsequent purchasers.

**Dictum Disapproved.**

Where the facts of a transaction are such as to make applicable this provision of the statute, the general principle of law that, where one of two innocent persons must suffer, the loss should fall on him whose acts or omissions have made the loss possible, does not apply. The dictum in Flanigan v. Pomeroy, 85 Minn. 264, to the contrary disapproved.

**Evidence.**

The evidence examined, and *held* to show that the vendee purchased the automobile in question in good faith and without any intent to hinder, delay, or defraud the creditors of the vendor or subsequent purchasers from him.

Action in the district court for Hennepin county to recover possession of an automobile or $1,000, the value thereof, in case delivery cannot be had, and for $200 for its detention. The case was tried before Holt, J., who made findings and ordered judgment in favor of defendant. A motion to amend the findings was granted and a motion for a new trial was denied. From the judgment entered pursuant to the amended order, plaintiff appealed. Reversed and new trial granted.

*M. H. Boutelle* and *A. M. Higgins,* for appellant.

*Wright & Matchan,* for respondent.

ELLIOTT, J.

This was an action in replevin, in which the plaintiff sought to recover possession of an automobile. The case was tried by the court without a jury, and findings of fact and conclusions of law were made in favor of the defendant. From the judgment entered thereon the plaintiff appealed to this court.

The principal facts are undisputed. The ultimate conclusion only is questioned. If the findings of fact are sustained by the evidence, the conclusions of law were properly drawn. One Spargo sold the automobile in question to the appellant, Wilson, who paid full consideration therefor, but agreed to allow Spargo to retain possession of the property for certain purposes and under certain conditions for

a specified time. While in possession, Spargo mortgaged the machine to Walrath, who had no knowledge of the sale to Wilson. The court found as a fact that the evidence does not prove that the sale to Wil- son "was made in good faith and without intent to hinder, delay, or defraud creditors and subsequent purchasers in· good faith of said Spargo." If the evidence sustains this finding of fact, the respondent must prevail in this court.

1. There is a line of cases which holds that, while delivery is not essential to pass title as between the vendor and vendee of personal property, it is necessary for such purpose as against every one but the vendor. Under this rule, when the same goods are sold to different persons by conveyances equally valid, he who first lawfully acquires the possession will hold them as against the other. The motives and intentions of the parties are immaterial, as the doctrine rests upon the general principle that, where one of two innocent persons must suffer, the loss should fall on him whose acts or omissions have made or contributed to make the loss possible. Lanfear v. Sumner, 17 Mass. 110, 9 Am. Dec. 119; Crawford v. Forristall, 58 N. H. 114; Burnell v. Robertson, 10 Ill. 282; Stephens v. Gifford, 137 Pa. St. 219, 20 Atl. 542, 21 Am. St. 868; Norton v. Doolittle, 32 Conn. .405. For other cases see 2 Mechem, Sales, § 981. Closely connected with this doctrine, but resting on other prin- ciples, is the rule which makes the retention of possession. by the vendor conclusive evidence of fraud. This doctrine also rests upon grounds of assumed public policy. It prevails by virtue of statutes or decisions based on the common law in a number of states. 2 Mechem, Sales, § 984; 20 Cyc. 539, note 13. In the greater number of states, however, the rule is established that the mere retention of possession by the vendor is presumptive evidence only of a fraudulent and colorable sale, and the vendee is permitted to overthrow this pre- sumption by evidence which establishes his good faith and want of knowledge of any fraudulent intent on the part of the vendor. 20 Cyc. 536, et seq. The statutes are referred to in the notes to 2 Mech- em, Sales, §§ 960, 961.

2. In the thirteenth year of Elizabeth there was enacted the famous statute which made all conveyances not made bona fide and for value,.

with intent to injure and delay or defraud the creditors, void as to such creditors. St. 13 Eliz. c. 5. A later statute extended this protection to subsequent purchasers as well as creditors. St. 27 Eliz. c. 4. These statutes did not in terms apply to personal property, but from the time of Sir Edward Coke's decision in Twyne's Case, 3 Coke, 80b, 5 Eng. Rul. Cas. 2, sales of personal property made with intent to delay and defraud creditors or subsequent purchasers have been regarded as within the provisions of the statutes. The question soon arose whether, under these statutes, possession by the vendor was fraudulent per se, and therefore conclusive, or merely presumptively fraudulent.

In Twyne's Case, in speaking of the indicia of fraud, it was said that "continuance of the possession in the donor is the sign of trust for himself." In Edwards v. Harben, 2 T. R. 587, it was held that, "if there be nothing but the absolute conveyance without the possession, that in point of law is fraudulent." For some time thereafter this was the established rule in the English courts, but it was finally held that the proper construction of the statute made such a conveyance presumptively fraudulent only. Hale v. Metropolitan, 28 L. J. Ch. 777; Gregg v. Holland, [1902] 2 Ch. Div. 360. To clear up the difficulty which arose under the statute, Parliament enacted the various bills of sale acts, which are fully discussed and explained by Lord Blackburn in Cookson v. Swire, 9 App. Cas. 653–670 (1884). See also references to these acts and decisions thereunder in notes to the fifth English edition of Benjamin, Sales, p. 496, and appendix, p. 1029, and in the note to Twyne's case in 5 Eng. Rul. Cas. 27–39. See also Mr. Bennett's note to the sixth American edition of Benjamin, Sales, pp. 458–462, and Jones, Chat. Mort. § 320, et seq.

In the United States Edwards v. Harben was followed by Chancellor Kent in Sturtevant v. Ballard, 9 Johns. (N. Y.) 337, 6 Am. Dec. 281, and by the supreme court of the United States in Hamilton v. Russel, 1 Cranch (U. S.) 309, 2 L. Ed. 118. But in Warner v. Norton, 20 How. (U. S.) 448, 15 L. Ed. 950, Mr. Justice McLean stated that "for many years past the tendency has been in England and in the United States to consider the question of fraud as a fact for the jury under the instruction of the court." This is now the established

doctrine of the court. Jewell v. Knight, 123 U. S. 426, 8 Sup. Ct. 193, 31 L. Ed. 190; Smith v. Craft, 123 U. S. 436, 8 Sup. Ct. 196, 31 L. Ed. 267. See note 18 L. R. A. 604.

Section 3496, R. L. 1905, and the previous statutes which are embodied therein, were enacted for the purpose of removing any doubts as to whether the retention of possession by the vendor is conclusive or only presumptive evidence of fraud. It provides in express terms that such possession shall be presumed to be fraudulent and void as against subsequent purchasers in good faith, unless those claiming under such sale make it appear that the sale was made in good faith and without any intent to defraud such purchasers. The effect is to cast upon the vendee the burden of rebutting the statutory presumption of fraudulent intent by proving his own good faith and want of knowledge of fraudulent intent on the part of the vendor. Leqve v. Smith, 63 Minn. 24, 65 N. W. 121. The statute controls this case. If Wilson proved that he purchased the machine in good faith without knowledge of any intent on the part of Spargo to defraud his creditors or subsequent purchasers, he was entitled to the possession of the property.

It is conceded that on April 5, 1906, Spargo owed Wilson $250, the proceeds of an old machine which had been sold by Spargo for Wilson. The money had been retained for some time with the consent of Wilson. Spargo then owned a Jackson machine, which he used for demonstrating purposes. Wilson wished to purchase a new machine, and after various negotiations he purchased the Jackson machine for $1,000, which was substantially its actual value. In payment he at the time gave Spargo $700 in cash and satisfied the debt for $250 and accumulated interest. Wilson was interested in country banks, and his business called him away from home a great deal of the time. It was necessary that the machine should be stored in some garage. Spargo, being agent for the Jackson automobile, and having no other machine of that make on hand, wished to retain possession of this machine for a time and use it for demonstrating purposes. It was therefore agreed and stated in the bill of sale that Spargo might retain possession of the machine for thirty days and in the meantime use it for demonstrative purposes, in consideration

of which he was to store the machine and keep it in repair. Spargo's business and personal standing was good, and Wilson had no reason to suspect, and did not suspect, that Spargo was insolvent. It appears from all the evidence that if he had made special investigations he would have found that Spargo's standing was good. Spargo kept the machine in his garage after the expiration of the thirty days and continued to use it in his business. During this time he mortgaged it to the respondent, Walrath, who had no knowledge of the previous sale to Wilson and acquired his lien in good faith for value. Neither Wilson's bill of sale nor Walrath's mortgage was recorded. Walrath finally took possession of the machine, and in this action Wilson sought to recover possession from him.

A careful examination of the evidence compels the conclusion that Wilson was entitled to a finding of fact to the effect that he purchased the automobile in good faith and without any intent to hinder, delay, or defraud Spargo's creditors, or subsequent purchasers from Spargo. Wilson certainly acted in good faith in the matter, if such a thing is possible when the vendor is allowed to retain possession of the chattel. He paid full value for the property, and this in itself is persuasive evidence of his good faith. The respondent says that the appellant was not prejudiced by reason of his absence from the trial, "because no one disputed his good faith in buying the automobile." It is not contended that there was any actual bad faith on the part of Wilson.

In his brief the respondent thus states his position. The sale was not accompanied with immediate delivery and followed by an open and continuous change of possession, within the meaning of section 3496, R. L. 1905; and hence, "while in this case it may be true that on April 25, 1906, appellant in the utmost good faith purchased the automobile, but from that time on the action of the appellant in permitting and agreeing to allow Mr. Spargo, the vendor, to keep and use that machine in exactly the same manner after the sale as before, was a fraud per se upon any person who might either purchase or take the same as security without notice of the rights of a prior purchaser." This is the doctrine of Lanfear v. Sumner, 17 Mass. 110, 9 Am. Dec. 119, and the other cases of the group to which refer-

103 M.—27

ence has been made. As an abstract principle of law, that doctrine is sound and controlling when applied to appropriate facts and condi-- tions. But the effect which shall be given to possession under the particular circumstances disclosed in this record is declared by the statute, and the statute should not be disregarded and annulled by the application of the doctrine of equitable estoppel. Upon the evidence Wilson sustained the burden which the statute imposes upon him, and the finding of the trial court was thus erroneous.

We are inclined to believe that the court was misled by certain statements made in the case of Flanigan v. Pomeroy, 85 Minn. 264, 88 N. W. 761, which approve the doctrine of Lanfear v. Sumner. In that case it appeared that Hogan was the owner of a horse which he desired to sell. Flanigan agreed to pay $350 for the horse, and paid $10 on account, with the understanding that he should pay the balance before eleven o'clock the next day and then get the horse. Before the time had elapsed Boynton offered to purchase the horse from Hogan, and was informed that another party had an option which expired at eleven o'clock. Flanigan failed to appear within the time limit, and Hogan sold the horse to Boynton, who paid the purchase price in full and took possession of the property. Flanigan, claiming that the title of the horse passed to him at the time of the payment of the $10, brought an action in replevin and was defeated. The trial court did not make a finding that Flanigan was a purchaser in good faith, and, as this was necessary to his right to recover, the order was properly affirmed on that ground. As an additional reason why Boynton was entitled to retain possession of the horse, the court referred with approval to the doctrine of Lanfear v. Sumner, and cited certain cases in which that doctrine has been approved. The case was properly decided upon the first ground stated, and the additional reason given in the opinion must be regarded as no longer meeting with the approval of this court.

The judgment is therefore reversed, and a new trial granted.