CITIZENS STATE BANK OF TRACY v. FREMONT S. BROWN.[1]

February 11, 1910.

Nos. 16,458—(161).

Chattel Mortgage — When Void as to Creditors.
    A chattel mortgage is fraudulent and void as to creditors at the time of its

---

[1] Reported in 124 N. W. 990.

execution, where it was given with a tacit or express understanding and arrangement that the mortgagor may sell and dispose of the mortgaged property and apply the avails to his own use.

### Same — Collateral Agreement Inferred from Conduct.

Such an agreement may be inferred from the fact that the mortgagor does, with the actual or imputed knowledge and assent of the mortgagee, so sell and dispose of the property and apply the proceeds.

### Same —Mortgage Held Void.

In this case the evidence compelled the conclusion that the chattel mortgages here involved were void, although the creditors of the bankrupt mortgagors had no lien on the stock covered by the mortgages until acquired by subsequent bankruptcy proceedings.

### Same — Who Are "Creditors."

The term "creditors," as used in relation to mortgages fraudulent as to creditors, includes all persons who were such while the chattels remained in the possession of the mortgagor under the agreement, and their rights are not affected by the fact that they did not obtain judgment or a specific lien until after the delivery of the property to the mortgagee.

Action in the district court for Lyon county against the trustee in bankruptcy of the partners doing business under the name of the Tracy Furniture Company to recover a balance of $2,661.95 on three promissory notes dated May 8, 1907, which were secured by a chattel mortgage of the same date upon a stock of goods, and to have the mortgage, Exhibit B, declared a lien against the property therein described and against moneys received from the sale thereof. The answer alleged that the mortgage of February 4 and that of May 8, 1907, were executed with the intent of the parties thereto to hinder, delay and defraud the creditors of the bankrupts; that on May 8, 1907, the bankrupts were insolvent, the mortgage was a preference under the bankruptcy laws, and the effect of the mortgage was to enable plaintiff to obtain a greater percentage of its debt than any other creditor of the same class.

The case was tried before Olsen, J., who made findings of fact and as conclusions of law found that the amount due on the mortgage lien was $2,136.85, the mortgage, Exhibit B, was a valid lien upon $3,138.36 of the proceeds of the sale of the stock in the hands of the defendant trustee to the extent of $2,136.85, subject to such ex-

penses and charges of the trustee as might be found chargeable against said proceeds by the bankruptcy court. From a judgment entered pursuant to the findings, defendant appealed. Reversed.

[Plaintiff and respondent sought to subject certain funds in the hands of defendant and appellant as trustee in bankruptcy to the lien of a chattel mortgage given by the bankrupts on a stock of merchandise. In June, 1906, two brothers borrowed $2,000 from the plaintiff bank and secured the notes therefor by chattel mortgage. About June 1 one Schmid bought out one of the brothers, formed a partnership with the other, took over the stock of goods, and assumed the mortgage. The new firm borrowed an additional $1,000, and gave a new note and mortgage for $3,000. Subsequently various payments were made, and new loans negotiated, and new mortgages placed upon the stock of merchandise. On February 4, 1907, the entire indebtedness, amounting to $3,000, was renewed, and a new mortgage, described as "Exhibit A," executed. This instrument provided that the mortgagors should have the privilege of selling from the stock in the usual course of retail trade, but required that the purchase price of each article sold should be immediately applied on the mortgage indebtedness. This date is significant, because the trial court found that there had been filed and allowed in the bankruptcy court claims against said mortgagors:

Accruing prior to February 4, 1907 ................... $2,407 94
Accruing between February 4 and May 8, 1907 ....... 1,263 84
Accruing since May 8, 1907 ...................... 377 11

　　　　　　　　Total ...................... $4,048 89

There was not sufficient property in the hands of the trustee to pay these claims. On May 8, 1907, the mortgage was renewed, other notes were executed for the same sum, and a chattel mortgage was given to secure the same, described as "Exhibit B." All mortgages were duly filed. Nothing was actually paid by the debtors on the mortgage, except that $518.42 was paid in daily payments from June 27 to July 2, 1907. It is true that goods were sold to the amount of

$738, which was not in fact paid over to the mortgagee, but was applied by the court on the mortgage indebtedness. New goods were added to the stock, which the trial court held the trustee was entitled to retain free from the lien of the mortgage. Between February 4 and May 8, 1907, the mortgagors sold goods from the stock at retail in the usual course of business for cash or credit to the amount of over $3,000, but the mortgagors did not apply the proceeds to the mortgage debt. The mortgagors were found to have been solvent on February 4, 1907, but in failing circumstances, or else insolvent, on May 8, 1907. The plaintiff bank had no knowledge or notice of such insolvency on May 8, or at any time until June, 1907. On July 2, 1907, a receiver was appointed in proceedings in voluntary bankruptcy. On July 23 the mortgagors were adjudged bankrupts. Afterwards the defendant was appointed trustee in bankruptcy. All remaining assets, including the unsold part of the stock of merchandise mortgaged to plaintiff, was delivered to him. From a judgment in favor of plaintiff, defendant appeals.]

*Korns & Johnson,* for appellant.

*N. J. Robinson* and *J. A. Rickert,* for respondent.

JAGGARD, J. (after stating the facts within [ ] as above).

Plaintiff properly insists that a mortgage on a stock of merchandise, which provides that the mortgagors may retain possession and sell in the usual course of retail trade, so long as the proceeds of the sale of the goods are to apply on the mortgage in reduction thereof, is valid on its face, and is not fraudulent as against creditors or subsequent purchasers, if executed for a valuable consideration, unless it is shown that there was some agreement between the parties that the mortgagors might use the proceeds of the sale of the goods for their own use, instead of applying it on the mortgage. Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237; Donohue v. Campbell, 81 Minn. 107, 83 N. W. 469; Wilson v. Walrath, 103 Minn. 412, 115 N. W. 203; Conkling v. Shelley, 28 N. Y. 360, 361, 84 Am. Dec. 348; Frank v. Vollkommer, 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911; Jones, Chattel Mtgs. p. 530, c. 9. The fact, however, that sales were subsequently made, the proceeds of which were not applied to the mort-

gage indebtedness, is cogent, although not necessarily conclusive, evidence that it was the understanding of the parties to the mortgage, when it was made, that the mortgagor might do so. Donohue v. Campbell, supra.

In Horton v. Williams, 21 Minn. 187, it was said: "The conduct of the parties in dealing with the mortgaged property may, however, furnish evidence in some cases amounting to a moral certainty that the mortgage was executed with a fraudulent intent. Thus, in the case of a mortgage on a stock of goods in a retail shop, where the mortgagor continues in possession, making sales from day to day as owner, and dealing with the goods and the proceeds as his own, with the mortgagee's knowledge and assent, it is extremely difficult to resist the conclusion that this course of conduct on the part of the mortgagor was contemplated and intended by the parties when the mortgage was made." Actual fraudulent intent is not material. Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; and see 8 Columbia Law Rev. 309; Joseph M. Hayes Woolen Co. v. Gallagher, 58 Minn. 502, 60 N. W. 343; Charles Baumbach Co. v. Hobkirk, 104 Wis. 488, 80 N. W. 740; Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L.R.A. 137, 11 Am. St. 691.

In Standard v. Schultz, 45 Kan. 52, 25 Pac. 625, it was pointed out that under the course of dealing pursued by the debtor he had the same control over the property, and exercised the same right to sell and to make an application of the proceeds of sale, as if the chattel mortgage had never been executed. The chattel mortgage could be used by the debtor as a shield against one class of creditors, while preferences could be given to others. It was, therefore, held as a matter of law, the chattel mortgage was void as against creditors. Simpson, C., at page 56 of 45 Kan., and page 625 of 25 Pac.

In Durr v. Wildish, 108 Wis. 401, 84 N. W. 437, Bardeen, J., said of sales made by the mortgagee, largely in excess of additions, only a small part of which had been applied to the mortgage debt, that the inevitable tendency and effect of the mortgage, though valid on its face, was to hinder and delay the collection of debts against the mortgagor. It was accordingly held invalid as to creditors. And see

Bank v. Joannes, 98 Wis. 321, 73 N. W. 999 (in which emphasis was placed on knowledge the mortgagor must have derived from the situation of the parties and of the property).

In the case at bar, the mortgages, Exhibits A and B, were prima facie valid. The findings of the trial court in their favor must be sustained, unless the evidence necessitates their reversal. The direct testimony as to the nature of the original understanding is not conclusive that there was any initial intention by the parties to the instrument to apply the proceeds of the sale to the mortgage. However, the evidence of one of the mortgagors strongly inclines so to show.

The determining feature is the evidence introduced to show the implied or tacit understanding. The partnership conducted its business two doors south of plaintiff bank, and between it and the post office. Plaintiff's assistant cashier passed the store every day. He had examined the books of the partnership. It does not certainly appear what those books revealed to him; but the court has expressly found that between February 4 and May 8 the mortgagors sold $3,000 worth of goods. This, together with what was subsequently applied, was more than enough to pay the whole mortgage debt. The mortgagors made their deposits in the plaintiff bank. Before the execution of the mortgage, Exhibit B, the plaintiff bank, through its agent, told the mortgagors "that our committee had decided that the matter couldn't run the way matters were going, and that they were not applying all that they should apply according to the sales they were making; I told them that the committee refused to renew the paper." A member of the partnership explained that the money they were handling just then came from orders they were taking for rugs. At another time, when the mortgagee "wanted him to apply the money," he said it was for an "undertaking" job that they had to use elsewhere. Now the "undertaking" stock included articles which were covered by the mortgage.

It is evident that the bank's explanation of its actions is inadequate in other respects. The bank knew that the partnership was doing business and selling goods on time, and that it was not getting the accounts. It admits that it never demanded a specific statement; that it never knew what the daily sales amounted to, and never went

into the store to see what the daily sales were, nor did its representative go there to ascertain whether they were keeping a record of sales. To this there was one conspicuous exception: In June demands were made, and on June 16 respondents placed a man in the store of the partnership to receive all proceeds from sales.

We are unable to resist the conclusion that a tacit or implied understanding was shown by which the mortgagors were allowed to sell the goods without applying the proceeds to the payment of the mortgage debt. This was a proceeding in which the plaintiff asked that the court declare Exhibit B to be a good, valid, and existing lien against and upon the property described. Defendant insisted that plaintiff should take nothing. It follows, from the previous discussion, that the trial court was in error in holding that there was such a lien.

In this view it is not material that the creditors of the bankrupt mortgagees had any lien on the stock of goods covered by Exhibits A and B, and acquired such lien only as a result of the bankruptcy proceedings. Neither Exhibit A nor B was valid as against creditors. Exhibit B was executed on May 8, 1907. On July 23 the mortgagor was adjudged bankrupt, in proceedings under the national bankruptcy act.[2] It was therefore void as a preference. Collier, Bankruptcy, p. 644, § 60. Regarded as a renewal of Exhibit A and prior mortgages, it was void as against creditors because of the implied permission by the bank to the partnership to sell the mortgaged stock and to use the proceeds for private purposes.

None of the authorities to which we are referred avail to change this conclusion. In First National Bank v. Anderson, 24 Minn. 435 (1878), the chattel mortgage was void. The mortgagor, it was held, had the right to turn the mortgaged property over to the mortgagee before any creditor had proceeded against the mortgagor. Unlike this case, that one did not involve the national bankruptcy act. Nor is there any support for plaintiff's contention afforded by First National v. Wittich, 33 Fla. 681, 15 South. 552. That decision recognized that an original agreement between mortgagor and mortgagee,

2 30 St. 544, c. 541.

permitting the mortgagor to apply a considerable portion of the proceeds of the sale of the mortgaged property to his private use, was void as a matter of law; not merely as to the persons having liens, but as to the creditors of the mortgagors generally. This was held to be the rule, whether such permission was in writing or not, and whether it was actual or implied. And see Jones, Chattel Mortgages, § 384, bottom page 539. It was there further held: The fact that the mortgage was void did not preclude the bank from entering into any other valid prima facie arrangement with [the mortgagor] before complainant's judgment lien was obtained by which the superior right to be paid out of [the mortgagor's] property was secured. This case, also, did not involve the national bankruptcy act.

The principle of Brackett v. Harvey, 91 N. Y. 214, is in strict accord with the conclusion here reached. The doctrine of constructive payment the court limited to liens adverse to the mortgage, and held that it could not be invoked where no such lien existed. But the general doctrine of void chattel mortgages was formulated in strict accordance with that here sustained. Its application failed, because "it did not appear that any of the creditors represented by plaintiff were creditors at the time said mortgage was given." Page 215. Any possible doubt on the subject was resolved by the court in Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. 678, which held that "the term 'creditors' includes all persons who were such while the chattels remained in the possession of the mortgagor under the agreement, and their rights are not affected by the fact that they did not obtain judgment or a specific lien until after delivery of the property to the mortgagee."

Reversed.