## W. A. MARIN v. PHIL CALMENSON AND OTHERS.[1]

### February 21, 1924.

### No. 23,840.

**Avoidance of its trust deed by corporation—return of borrowed money necessary.**

1. A corporation, whose indebtedness already exceeded the limitation specified in the articles of incorporation, borrowed money and issued its bonds to the lenders. The bonds were secured by a trust deed. The corporation brought suit to avoid the deed on the ground that in borrowing the money its officers had exceeded their authority. *Held*:

(1) That neither the corporation nor its trustee in bankruptcy could maintain the suit without returning the borrowed money.

(2) That it was not essential to the right of the bondholders to enforce the obligation of the corporation to show that they were ignorant of the fact that its officers had exceeded the limit of authorized corporate indebtedness.

**Avoidance of deed by trustee in bankruptcy.**

2. The trustee in bankruptcy, as the representative of general creditors, could not avoid the deed without showing that it was given in fraud of the creditors' rights.

**Immaterial that director was bondholder.**

3. Neither could it be avoided because one of the bondholders was a director of the corporation, when it appeared that he had acted in good faith and had secured no undue advantage to himself. Minnesota L. & T. Co. v. Peteler Car Co. 132 Minn. 277, followed and applied.

**Proof of authorization by directors unnecessary.**

4. The trial court, having limited the security to the amounts loaned when the bonds were issued, it was unnecessary to show that the

[1] Reported in 197 N. W. 262.

transactions with the bondholders were authorized by the board of directors.

**Sale of mortgaged stock of goods without payments on mortgage.**
    5.  The trust deed covered a fluctuating stock of goods as well as corporate real property.  It did not authorize the corporation to appropriate the stock to its own use without applying its value or the price for which it was sold upon the mortgage debt.  There was no evidence of an oral agreement to that effect.  The deed was not void as to general creditors.

Action in the district court for Chippewa county, wherein the trustee in bankruptcy of the Moyer Manufacturing Company was substituted as plaintiff, to enjoin defendants from transferring certain bonds and foreclosing a trust deed securing them, and for a decree canceling the bonds and deed.  The case was tried before Qvale, J., who made findings, ordered judgment in favor of Phil Calmenson, Incorporated, and Sumner L. Moyer, administrator of the estate of Lycurgus R. Moyer, deceased, and directed a sale of the property described in the trust deed, with a right in the plaintiff to redeem from the foreclosure sale.  From the judgment entered pursuant to the order for judgment, plaintiff appealed.  Affirmed.

*Kerr & Richardson,* for appellant.

*Oluf Gjerset, C. A. Fosnes* and *John C. Haave,* for respondent.

Lees, C.

This suit was commenced by the Moyer Manufacturing Company, a Minnesota corporation, to avoid a trust deed it had given to secure a bond issue of $75,000, evidenced by 750 bonds each for the sum of $100, and to enjoin the foreclosure of the deed.  The present plaintiff was substituted when the company was adjudged a bankrupt.  The trial court found for the defendants and the trustee has appealed from the judgment.

By its amended articles of incorporation, a limit of $125,000 was placed upon the indebtedness of the corporation, and the limit had been exceeded when the bonds were issued.  This is the ground upon which plaintiff seeks to avoid them.  In October, 1918, the board of

directors and the stockholders determined to issue the bonds, but the attempt to float them was unsuccessful and they were left unsigned in the hands of the trustee named in the deed. He held them until October 20, 1919, when 150 were executed and delivered to the defendant Sumner L. Moyer, as administrator of the estate of Lycurgus R. Moyer, deceased. The administrator held the company's pastdue note for $3,000 and made an additional loan of $11,000, receiving the bonds as security for the entire debt. Prior to December 20, 1920, the defendant Calmenson had loaned $5,000 to the company and taken its unsecured note. He had also become liable as an indorser of its notes in an amount exceeding $60,000.

The company owed the Chippewa County State Bank approximately $75,000. L. C. Moyer was president of the bank and secretary of the company. His son, Malcolm B. Moyer, was president of the company, and another son, Everett Moyer, was purchasing agent. The bank had made loans to the corporation in excess of the limit fixed by statute and had taken from it a large amount of bad paper. The state bank examiner insisted that the bad paper should be written off. The Moyers asked Calmenson to come to the rescue. He did so, giving the company Unites States bonds and two checks aggregating in all $20,000. He received the remainder of the bonds, 599 in number, one having been lost. He took them as security for the new loan, the old indebtedness, and his liability as indorser of the company's paper. On November 1, 1918, and at all times thereafter, the total indebtedness of the corporation, not including the bonds exceeded $125,000. It increased rapidly and as early as October, 1919, the company was insolvent.

The court found that prior to April 1, 1921, the defendants Moyer and Calmenson and the directors, other than Malcolm B. Moyer, did not know that the corporate indebtedness exceeded $125,000 and that the new loans and the transfer of the bonds as security for them were made in good faith and for value. It was held that the mortgaged property should be sold to satisfy the loans, but not the other indebtedness to Moyer and Calmenson.

The grounds of plaintiff's attack upon the judgment are: (1) In incurring an indebtedness of more than $125,000, the corporation

exceeded its power and hence the bondholders could not enforce the trust deed without showing that the company benefited by the transactions in question; (2) Calmenson could not assert rights to the injury of other creditors because he was a director of the corporation; (3) the delivery of the bonds and trust deed was unauthorized; (4) the trust deed covered a fluctuating stock and was void as to creditors represented by a trustee in bankruptcy.

1. It is a settled rule that a person who deals with a corporation must take notice of its charter or articles of association. Kraniger v. People's Bldg. Soc. 69 Minn. 94, 61 N. W. 904. The bondholders were, therefore, charged with notice of the limit beyond which the company could not go in contracting debts. They did not have actual notice that the limit had been passed until after they parted with their money. Neither did the directors know it, with the exception of Malcolm B. Moyer, who seems to have had the entire management of the affairs of the company. But, because Calmenson was a director, it is contended that he at least is presumed to have had knowledge of everything shown by the books of the corporation, and it appears that the "bills payable" account in the general ledger showed an indebtedness of more than $125,000 when he took the bonds he holds. For the sake of argument only, we will assume that the contention is sound. The further contention is that only the bank benefited by the loan made by Calmenson, and hence the rule that a corporation which has received and enjoyed the fruits of an unauthorized transaction cannot be heard to question the transaction, is without application.

Calmenson gave the checks and bonds to the corporation. He did not deal with the bank. It got the proceeds of the loan from the company. The company could have kept the money. It paid it over voluntarily and its debt to the bank was reduced. The company contracted a new debt and gave security for its payment. The bank had been without security. All the creditors would have shared equally in the corporate assets if the transactions with the bondholders had not occurred. Herein lies the grievance of other creditors. But they are not here attacking the transactions as unlawful preferences. They may be open to attack on that ground,

Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418, but that is a matter not involved in this appeal. Moreover, the court limited the security to the amount of new loans made when the bonds were issued, so the bondholders obtained no preference as to the company's pre-existing indebtedness to them.

Having actually received $31,000 from the bondholders, the company could not escape liability on its obligation on a plea of ultra vires, without returning the money. The settled rule that a corporation is liable on an ultra vires contract if it has received and obtained benefits thereunder, is clearly applicable. Clearwater County State Bank v. Bagley-Ogema Tel. Co. 116 Minn. 4, 133 N. W. 91, 36 L. R. A. (N. S.) 1132, Ann. Cas. 1913a, 622; Northland Produce Co. v. Stephens, 116 Minn. 23, 133 N. W. 93; Olson v. Warroad Merc. Co. 136 Minn. 310, 161 N. W. 713. The fact that the company immediately parted with the money to pay its debt to the bank can make no difference in principle. If it were a fact that the bondholders knew when they made the loans that the corporation had already gone beyond the limit of its authorized indebtedness, that would not better the case for reasons well stated by Judge Sanborn in Sioux City Terminal A. & W. Co. v. Trust Co. 82 Fed. 124, 27 C. C. A. 73, affirmed in 173 U. S. 99, 19 Sup. Ct. 341, 43 L. ed. 628. In substance he said that no one should be permitted to plead his own wrong to relieve himself from the obligations of an executed contract the benefits of which he retains. The innocence or ignorance of the creditor is not essential to his right to enforce the contract, because the principle of estoppel is not applied, but the fundamental principle that one who seeks equity must do equity and may not accept the benefits and repudiate the burdens of his contract. We hold that neither the company nor plaintiff, as its representative, could avoid the transaction with the bondholders.

2. Has the trustee in bankruptcy greater rights as the representative of the creditors?

"A rule receiving support from some of the authorities is that a creditor cannot attack a corporate transaction as ultra vires

merely; he can assail the act only on the ground that its intent or effect is to fraudulently divert the corporate assets from his debt. He must charge fraud." 3 Thompson, Corp. § 2850.

This statement of the rule is in accordance with Sioux City Terminal R. & W. Co. v. Trust Co. supra, where at page 136 it was said that creditors whether their claims arose before or after the corporation executed a mortgage to secure indebtedness in excess of that authorized by the articles of incorporation, have no right to attack the mortgage, superior to that of the mortgagor. They cannot attack it unless they prove that it was executed by the corporation and received by the trustee and bondholders to defraud creditors and that it did defraud them. Force v. Age-Herald Co. 136 Ala. 271, 33 South. 866, and Garrett v. Burlington Plow Co. 70 Iowa, 697, 29 N. W. 395, 59 Am. Rep. 461, are to the same effect. Directors do not stand in the same relation to general creditors of a corporation as they occupy when the rights of the corporation or its stockholders are involved. When creditors assail a disposition of corporate property, they are not clothed with the rights of the corporation or of the stockholders. Their right to impeach the transaction depends upon its fraudulent character. O'Conner M. & M. Co. v. Coosa Furnace Co. 95 Ala. 614, 10 South. 290, 36 Am. St. 251. The right of a receiver of an insolvent corporation to disaffirm its dealings in the interest of creditors is recognized, but the dealings must have been in fraud of the creditors' rights. Pittsburg Carbon Co. v. McMillin, 119 N. Y. 46, 23 N. E. 530, 7 L. R. A. 46.

On its face, Washington Mill Co. v. Sprague Lbr. Co. 19 Wash. 165, 52 Pac. 1067, appears to be in conflict with the cases cited in support of the rule. But even in that case the court qualified the statement that a receiver of an insolvent corporation, acting in behalf of its creditors, may disaffirm acts of the corporation and set aside transfers of corporate property by adding that the transfer must have been made in fraud of the creditors' rights. We think this is the proper test by which to determine whether a transaction ultra vires the corporation may be avoided at the suit of credi-

tors or their representative, and accordingly hold that under the facts in the case at bar plaintiff, as the representative of the creditors, had no better right to attack the transactions with the bondholders than he had as the representative of the corporation.

3. The principles in the light of which a transaction between a corporation and a director will be examined were lucidly stated in Minnesota L. & T. Co. v. Peteler Car Co. 132 Minn. 277, 156 N. W. 255. Their application to the facts in the case at bar is patent. The court found that Calmenson acted in entire good faith and secured no undue advantage to himself. The finding is sustained by the evidence. The situation is no different than it would have been if Calmenson had not been connected with the corporation as an officer or stockholder.

4. No meeting of the board of directors was held to authorize the delivery of the bonds before or at the time when the loans were made. That is unimportant in view of the facts heretofore stated.

The answers contained allegations which would entitle the bondholders to foreclose the trust deed and there was a prayer for judgment for the sale of the mortgaged property and the application of the proceeds to pay the amount found due to Moyer and Calmenson respectively. The court determined that the bondholders were entitled to judgment for the amounts actually loaned when they received the bonds and directed a sale of the mortgaged property to pay those amounts only, the sale to be made subject to the right of redemption. General creditors will not be prejudiced by the judgment. By paying to the bondholders the amount they actually advanced when they took the bonds, the property can be saved for the creditors if it is worth saving.

5. If it appeared that the trust deed was given upon an agreement that the company might appropriate any part of the mortgaged property which a creditor could reach and need not apply its value or the price for which it was sold upon the mortgage debt, the legal conclusion would follow that the deed was made to defraud creditors and was, therefore, void. Horton v. Williams, 21 Minn. 187; Citizens State Bank v. Brown, 110 Minn. 176, 124 N. W. 990. There was nothing in the deed to show that there was such

an understanding and no evidence was introduced to show that there was an oral agreement to that effect. The case is ruled in this respect by Berkner v. Lewis, 133 Minn. 375, 158 N. W. 612.

Judgment affirmed.