Roundy and others, Appellants vs. Converse and another, Garnishee, etc., Respondents.

*March 31 — April 17, 1888.*

Debtor and Creditor.   *(1) Chattel mortgage: Sales by mortgagor: After-acquired property.   (2) Exemptions: Proceeds of sale of stock in trade.*

1. The fact that a chattel mortgage authorizes the mortgagor to sell the goods and replace them with others to be paid for out of the proceeds of such sales, does not affect the validity of the security, there being no agreement or understanding that he may dispose of the proceeds of the sales for his own use and benefit.   But the attempt to extend the security of the mortgage over the after-acquired goods is probably unavailing, except, perhaps, as a license to seize such goods.

2. The exemption of a debtor's stock in trade not exceeding $200 in value, under subd. 8, sec. 2982, R. S., does not extend to the proceeds of a sale thereof. Thus, a mortgagor who made no reservation of exemptions in a mortgage of his stock in trade, and claimed none when the property was sold under the mortgage, cannot claim any exemption in the balance of the proceeds of such sale remaining in the hands of the mortgagee after payment of the mortgage debt.

APPEAL from the Circuit Court for *Rock* County.

For some time previous to April, 1886, down to March, 1887, the defendant *C. N. Converse* was carrying on business as a merchant at Milton, in Rock county. Previous to the date first above mentioned, one James Pierce, who was the administrator of the estate of one G. W. Hamilton (the deceased son of the garnishee defendant, *Hannah B. Hamilton*), loaned to *Converse* $1,100 of the moneys of the estate of his intestate. *Mrs. Hamilton* was her deceased son's sole heir. *Converse* executed his note to Pierce for the loan, also a chattel mortgage, to secure it, on his stock of goods. The loan was made at the request of *Mrs. Hamilton*. The estate was duly settled in the county court about the middle of April, 1886, and the mortgage and note given for the loan were transferred to *Mrs. Hamilton.* A daughter of the latter, Mrs. Emma H. Cary, was the general agent of her mother, and had the whole charge and management of her business, *Mrs. Hamilton* being quite aged.

On December 23, 1886, *Converse* executed to *Mrs. Hamilton* a new note for the same loan, secured by a new mortgage of that date executed to her by him on his stock of goods, and thereupon she surrendered to him the original note and mortgage executed to Pierce. The mortgage last executed was duly filed in the proper clerk's office. The mortgaged property is described therein as follows: " All my stock of goods, including the entire stock of goods in the store kept by me in the Hamilton store in Milton, in-

cluding fixtures in store, and goods in store now, and those purchased to replace any which may be sold out." The mortgage also contains the usual clause authorizing the mortgagee to take possession of the mortgaged property at any time she may deem herself insecure, and to sell the same.

On March 3, 1887, Mrs. Cary was informed that an attachment against *Converse* had been, or was about to be, levied upon his stock of goods, and she thereupon went to the store of *Converse*, and found there a deputy-sheriff with such writ of attachment, who was about to close the store. She asserted the right of *Mrs. Hamilton* to the goods by virtue of the mortgage, and the deputy-sheriff and *Converse* yielded to her the possession of the store and goods. Thereupon all further proceedings under the attachment ceased, and the writ was never returned. The plaintiffs (who were such attaching creditors) afterwards commenced this garnishee proceeding against *Mrs. Hamilton.*

After giving due notice, as required by the mortgage, Mrs. Cary, for and on behalf of her mother, sold the stock of goods for a little more than $1,600.

Before this action was commenced, garnishee process was served upon *Mrs. Hamilton* in an action brought by another creditor against *Converse*, in which action she was charged, as a garnishee, to the amount of $160.88 by the judgment of the court.

The plaintiffs having recovered judgment against *Converse*, the present action came on for trial July 1, 1887, and was then tried. At this time the defendant *Converse* first appeared, and obtained leave of the court to answer, claiming exemptions of $200 stock in trade, and $200 worth of provisions for his family for one year. The trial resulted in quite voluminous findings of fact, substantially in accordance with the facts above stated. The court allowed *Converse* $200 for his exemptions, and allowed *Mrs. Hamilton*

$1,150.32 on account of her unpaid demand against *Converse*, and the $160.88 with which she had been charged in the other garnishee suit. The mortgage was held to be a valid security. The balance of the proceeds of the sale, being $78.10, *Mrs. Hamilton* was adjudged to pay to the plaintiffs, together with $47.10, the costs and disbursements of the action,— amounting in all to $125.25. The plaintiffs appeal from the judgment.

For the appellants there was a brief by *Fethers, Jeffris & Smith*, and oral argument by *Mr. M. G. Jeffris*. To the point that the mortgage from *Converse* to *Mrs. Hamilton* was void as against the creditors of *Converse*, they cited *Anderson v. Patterson*, 64 Wis. 557; *Wilson v. Voight*, 13 Pac. Rep. (Col.), 726; *Chynoweth v. Tenney*, 10 Wis. 397; *Single v. Phelps*, 20 id. 398; *Case v. Fish*, 58 id. 56.

For the respondent *Hannah B. Hamilton* there was a brief by *Winans & Hyzer*, and oral argument by *Mr. E. M. Hyzer*.

LYON, J. Two questions were litigated on the trial. These are, (1) Is the mortgage of December 23, 1886, a valid security? and, if so, (2) Should *Converse* have been allowed any exemptions?

1. There is nothing upon the face of the mortgage in question to impeach its validity, although the fair inference from its terms is that the mortgagor was authorized to sell the goods and replace them with others to be paid for out of the proceeds of such sales. Probably the attempt to extend the security of the mortgage over after-acquired goods was unavailing, except, perhaps, as a license to seize such goods. This clause does not affect the validity of the security. Such is the purport and effect of the opinion by RYAN, C. J., in *Hunter v. Bosworth*, 43 Wis. 583, and of the cases there cited.

A persistent effort was made upon the trial to show that,

at the time of the execution of the mortgage, there was some agreement or understanding between the parties thereto that the mortgagor might dispose of the proceeds of sales of the mortgaged property for his own use and benefit, thus bringing the case within the rule of *Anderson v. Patterson*, 64 Wis. 557. A careful examination of the testimony satisfies us that the plaintiffs failed to establish this proposition, and failed also, we think, to show that the mortgage was tainted with fraud. The circuit court so held, thus establishing the validity of the mortgage. The ruling cannot be disturbed. We hold, therefore, that the mortgage was a valid security.

2. The ruling of the circuit court allowing *Converse* $200 out of the proceeds of the sale of the mortgaged property, as and for his exemptions, cannot be upheld. He made no reservation of exemptions in his mortgage to *Mrs. Hamilton*, and claimed none when she sold the property. Conceding that he was entitled to exemptions had he claimed the same while the property remained in the hands of *Mrs. Hamilton* (which is, to say the least, quite doubtful), he certainly lost all right thereto after the property was sold, and the proceeds thereof in the hands of *Mrs. Hamilton* attached by the plaintiffs. The exemption is of the specific property enumerated in the statute, that is to say, of $200 worth of the goods constituting the stock in trade, and does not extend to the proceeds thereof. R. S. sec. 2982, subd. 8. In this respect the case is unlike one which involves the proceeds of money arising from insurance upon exempt property destroyed by fire (subd. 17), or money arising from the sale of a homestead (sec. 2983). Such moneys are specially exempted by the statutes. We are aware of no provision of law which extends the exemption of stock in trade to the proceeds of such stock realized upon a sale thereof. It was error, therefore, to allow any exemptions to *Converse* out of the moneys in the hands of

*Mrs. Hamilton.* The result is that the plaintiffs' judgment against the garnishee should be increased $200.

It appeared that *Mrs. Hamilton* took, under the mortgage, goods of the value of $133 not covered by it. The circumstance is immaterial, because the plaintiffs recover of *Mrs. Hamilton* more than the value of such goods.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to the circuit court to render judgment for the plaintiffs in accordance with this opinion.