WILLIAM F. DONOHUE v. J. E. CAMPBELL and Another.[1]

August 2, 1900.

Nos. 12,206—(255).

## Chattel Mortgage for Purchase Price—Possession by Mortgagor.

A chattel mortgage on a stock of merchandise and store fixtures given for the purchase price thereof provided that it should cover all future additions to the stock, and that the mortgagor should keep up the stock at all times to its then present value; that until default he might retain possession of the property, and use and enjoy the same, but if he made any attempt to sell any part of it without the written consent of the mortgagee he was authorized to take possession of it. *Held*:

## Fraud—Sale of Mortgaged Property.

1. That the mortgage did not expressly nor by necessary implication provide that the mortgagor might sell the mortgaged property as his own, without applying the proceeds to the payment of the mortgaged debt, and that it was not, as a matter of law, fraudulent as to creditors.

## Good Faith—Findings.

2. The evidence sustains the findings of the trial court that the mortgage was made in good faith, and without any intention to defraud.

Action in the district court for Stearns county by plaintiff as administrator of the estate of Reuben A. Richmond, deceased, to have a chattel mortgage executed by decedent to defendant Campbell declared fraudulent as to creditors and for other relief. The case was tried before Searle, J., who found in favor of defendant Campbell. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*John B. Atwater* and *Welch, Hayne & Hubachek*, for appellant.

*Calhoun & Bennett*, for respondents.

START, C. J.

The defendant Campbell, on April 15, 1896, was the owner of a retail stock of merchandise and store fixtures, and on that day he sold the property to the plaintiff's intestate, Reuben A. Richmond. As security for the purchase price of the stock, he took a chattel

[1] Reported in 83 N. W. 469.

mortgage on the stock and fixtures for $2,200 from the purchaser, which was duly filed. The mortgage, after a general description of the property mortgaged, contained these provisions:

"Being the stock of drugs and fixtures purchased this day by the said party of the first part from said party of the second part, together with all future additions to said stock, and all goods hereafter purchased to replenish said stock, the same being valued at $3,000; and said party of the first part hereby agrees to keep said stock at all times up to its present value, quality, and condition."

It was also stipulated in the mortgage that until default by the mortgagor in the conditions of the mortgage he was to retain possession of the property, "and to use and enjoy the same, during which time it shall be kept and maintained in as good order and condition as it is"; and, further, that if the mortgagor, without the written consent of the mortgagee, attempted to sell the mortgaged property, the mortgagee might take immediate possession thereof.

The mortgagor took possession, and retained the mortgaged property until December 27, 1896, at which time he died intestate, having paid nothing on the mortgage, except the sum of $93.95. Thereupon the defendant Campbell took possession of the property as mortgagee, and thereafter the defendant Edmond C. Richmond was appointed special administrator of the mortgagor's estate, and brought an action against the mortgagee to have the mortgage declared fraudulent as to creditors, and to recover the possession of the property. This action failed on the ground that the special administrator was not authorized to maintain it. See Richmond v. Campbell, 71 Minn. 453, 73 N. W. 1099.

The plaintiff was duly appointed by the probate court of the county of Stearns general administrator of the mortgagor's estate, against which claims have been presented and allowed by the probate court to an amount exceeding $500. There being a deficiency of assets in the hands of the plaintiff, as administrator, to pay such debts, he brought this action under the provisions of G. S. 1894, § 4506, to set aside the chattel mortgage as fraudulent as to creditors. The trial resulted in findings of fact and conclusions of law by the trial court to the effect that the mortgage was not fraudulent in law or fact, but was made in good faith, to secure an honest debt,

without any intent by either party thereto to defraud creditors, and that judgment be entered for the mortgagee, the defendant Campbell, on the merits. The plaintiff appealed from an order denying his motion for a new trial.

1. The first and most serious question presented for our decision by the record is whether the chattel mortgage was void on its face.

The settled doctrine of this court, which has been rigidly enforced, is that a mortgage on a stock of merchandise, which on its face expressly or by necessary implication authorizes the mortgagor to dispose of the property as his own, is, as a matter of law, without reference to the actual intent of the parties, fraudulent and void as to the other creditors of the mortgagor. Chophard v. Bayard, 4 Minn. 418 (533); Horton v. Williams, 21 Minn. 187; Stein v. Munch, 24 Minn. 390; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; Pierce v. Wagner, 64 Minn. 265, 66 N. W. 977, 67 N. W. 537; Pabst Brewing Co. v. Butchart, 67 Minn. 191, 69 N. W. 809. While none of the opinions in these cases expressly states that, where the mortgage contains an express agreement authorizing the mortgagor to sell in the usual course of business, the mortgage is void unless it also contains an agreement that the mortgagor shall apply the proceeds of the sales to the payment of the mortgage debt, yet such is the necessary and logical inference from the facts of the cases and the language used by the court. Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237. The rule adopted by the courts of one-half of the states which have passed on the question is that such mortgages are not, as a matter of law, fraudulent as to creditors, but the question is one of fact, unless they show expressly on their face that the mortgagor is to retain the proceeds of the sales for his own use. It may be true, and probably is, as claimed by plaintiff, that this is a just and logical rule, and in accordance with the trend of modern authority. Jones, Chat. Mort. (4th Ed.) § 415; Brett v. Carter, 2 Low. 458, Fed. Cas. No. 1,844; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565; Peabody v. Landon, 61 Vt. 318, 15 Am. St. Rep. 903, 912, and notes; Ephraim v. Kelleher, 4 Wash. 243, 18 L. R. A. 604, and notes. However this may be, the rule adopted by this court is too firmly settled to be departed from, but it is not to be extended to cases not fairly falling within it.

Now, the mortgage in question does not expressly provide that the mortgagor may sell the property as his own, or at all; but the plaintiff claims that such a stipulation is necessarily implied from the character of the property and the express provisions that the mortgage should cover all goods thereafter purchased to replenish the stock, that the mortgagor should keep it up to its then present value, and that until default he should retain possession of the mortgaged property, and use and enjoy the same, keeping it in as good order and condition as it was when the mortgage was made. If these were all of the provisions of the mortgage pertinent to the question we are considering, the inference would fairly follow that the mortgagor was authorized to sell the stock in the ordinary course of business, but not necessarily as his own. The inference cannot be extended beyond what is reasonably and necessarily to be inferred from the express stipulations without assuming that the proceeds of the sales were not to be applied to the payment of the mortgage.

The plaintiff, however, contends that the stipulation that the mortgagor might retain possession of and use the property necessarily implies that he had a right to sell it as his own and for his use and benefit, for in no other way could he use and enjoy it. But during the time he was given the right to use and enjoy the property he was bound by the express stipulation in the mortgage to keep it in good order and condition. How could he keep it and also sell it in order to get the use of it? True, it is possible to infer from this express provision that the stock, as replenished from time to time, was to be kept in good order and condition; but a more reasonable interpretation is that it applies only to the fixtures and property which were susceptible of a beneficial use. The case of Davenport v. Foulke, 68 Ind. 382, relied on by the plaintiff in support of his contention, was expressly based upon the authority of Mobley v. Letts, 61 Ind. 11, which was expressly overruled by the case of McFadden v. Fritz, 90 Ind. 590. The cases of Lodge v. Samuels, 50 Mo. 204, and Garden v. Bodwing, 9 W. Va. 121, also cited by the plaintiff, support his contention. But see Hewson v. Tootle, 72 Mo. 632. The provision of the mortgage as to replenishing the stock, and that as to the use of the property by the mortgagor, must be read and

construed in connection with the further express provision to the effect that, if any attempt is made to sell any part of the property by the mortgagor without the written consent of the mortgagee, the latter is authorized to take immediate possession of the whole of it. This negatives any inference that the mortgagor is authorized to sell as his own, or at all, any of the property, except upon the written consent of the mortgagee. Etheridge v. Sperry, supra; Kalk v. Fielding, 50 Wis. 339, 7 N. W. 296; Roundy v. Converse, 71 Wis. 524, 37 N. W. 811.

We therefore hold that the mortgage does not on its face either expressly or by necessary implication authorize the mortgagor to sell the mortgaged property as his own, and for his use, and that it is not, as a question of law, void as to his creditors.

2. Whether this mortgage was fraudulent and void as to creditors was a question of fact to be determined from the evidence, including the mortgage itself. The trial court found the fact in favor of the mortgagee, and the plaintiff assigns as error the finding on the ground that it is not sustained by the evidence.

The evidence is undisputed that the mortgage was given to secure an honest debt,—the purchase price of the mortgaged property. It is a fact, however, that the mortgagor retained possession of the property, selling a portion thereof in the usual course of business, and that only $93.95 of the proceeds thereof were paid on the mortgage, and that the mortgagee knew this fact. There was evidence tending to show that such sales were made pursuant to an agreement which was a part of the original transaction, but not inserted in the mortgage, that the mortgagor might sell the property in the ordinary course of business, but the proceeds thereof should be applied in payment of the mortgage debt. The fact of such sales, and that the proceeds were not so applied, of which the mortgagee had notice, is cogent, but not conclusive, evidence that it was the understanding of the parties to the mortgage, when it was made, that the mortgagor might so do. It was a question of fact for the trial court. To render the mortgage fraudulent, such must have been the understanding and intent of the parties at the time it was executed. The subsequent conduct of the mortgagor in dealing with the property with the knowledge of the mortgagee is evidence tend-

ing to establish the alleged fraud, but does not per se render the mortgage void. Horton v. Williams, supra; Clarke v. National Citizens Bank, 74 Minn. 58, 62, 76 N. W. 965, 1125.

Our conclusion, based upon the whole record, is that the finding of the trial court that the mortgage was given in good faith, and not for the purpose of defrauding creditors, is sustained by the evidence. The mortgage not being fraudulent in law or fact, it follows that the trial court's conclusion of law that the mortgagee was entitled to the mortgaged property was correct, and that it is unnecessary to consider any other questions urged on this appeal.

Order affirmed.