## VOWINCKEL v. FIRST FEDERAL TRUST CO. et al.

(District Court, N. D. California, S. D. June 1, 1926.)

No. 1297.

1. **War** ⬤�netz12—Immigrant, who returned to Germany and joined German Red Cross in 1915, held not "resident" of Germany nor an "enemy," as affecting right to return of property (Trading with the Enemy Act, §§ 2, 9 [Comp. St. §§ 3115½aa, 3115½e]).

German immigrant of 1892, who in 1915 returned to Germany and joined German Red Cross, and who was unable to return to the United States until 1922, *held* not a "resident" of Germany during his absence, within Trading with the Enemy Act, § 2 (Comp. St. § 3115½aa), nor an "enemy," as affecting his right to recover, in suit under section 9 (Comp. St. § 3115½e), property seized by Alien Property Custodian.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Enemy; Resident.]

2. **War** ⬤⟶12—Person, entitled to return of property seized by Alien Property Custodian, held not entitled to interest on cash held in Treasury (Trading with the Enemy Act, § 9 [Comp. St. § 3115½e]).

Plaintiff, entitled in suit under Trading with the Enemy Act, § 9 (Comp. St. § 3115½e), to return of property seized by Alien Property Custodian, *held* not entitled to interest on cash held in the Treasury.

**3. War ⊂⇒12—Costs are not recoverable by plaintiff in suit under Trading with Enemy Act (Trading with the Enemy Act, § 9 [Comp. St. § 3115½e]).**

Plaintiff, recovering property of Alien Property Custodian in suit under Trading with the Enemy Act, § 9 (Comp. St. § 3115½e), held, not entitled to costs.

**4. United States ⊂⇒125(2)—War ⊂⇒12—Suit to recover property seized by Alien Property Custodian is against United States, and only statutory relief may be awarded (Trading with the Enemy Act, § 9 [Comp. St. § 3115½e]).**

A suit under Trading with the Enemy Act, § 9 (Comp. St. § 3115½e), to recover seized property, is in substance against the United States; hence no relief not provided for by statute can be awarded.

In Equity. Suit by F. W. Vowinckel against the First Federal Trust Company and others. Decree for plaintiff.

A. P. Black, of San Francisco, Cal., for plaintiff.

George J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, both of San Francisco, Cal., for defendants.

KERRIGAN, District Judge. This is a suit under section 9 of the Trading with the Enemy Act (Comp. St. § 3115½e), in which plaintiff seeks the recovery of certain property seized by the Alien Property Custodian in 1917. The allegations of the bill are fully set forth in a recent decision by the Circuit Court of Appeals, which reversed a decree of this court granting a motion to dismiss. Vowinckel v. First Federal Trust Company (C. C. A. 9) 10 F.(2d) 19.

[1] The plaintiff was born in Germany, where he graduated from the University of Berlin and was granted a license to practice medicine. In 1892 he came to the United States and took up a residence in California, where a similar license was granted him, and where for 17 years he had a notable career as chief surgeon of the California Woman's Hospital. After the World War had broken out, he joined the German Red Cross and returned to Germany.

From October 26, 1915, until hostilities had ceased, he was actively engaged as a physician and surgeon in treating, without regard to nationality, flag, or rank, all wounded combatants and civilians who were brought before him. When the war ended, he attempted to return to the United States. It was not, however, until 1922, that he succeeded in obtaining the necessary passport visa. Meanwhile his property, worth in excess of $65,000, had been seized under alleged authority of the Alien Property Law, and was withheld from his possession. He now asks for its restoration.

The defense is that he was an alien enemy when it was seized; more particularly, that he was an "individual * * * resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States was at war." Act Oct. 6, 1917, § 2 (Comp. St. § 3115½aa). But the evidence shows that he had no home in Germany or France during the arduous years which he spent in those countries; that his sleeping quarters were a field tent here, a dug-out there, wherever the Red Cross went among the wounded and the dying; that his trunks remained unpacked throughout the entire period of the war; and that he was treated as a foreigner from the day his field service ended.

The opinion of the Circuit Court of Appeals intimates that plaintiff may, because of his activities in Germany, or because of his relations to the German government, have become an enemy of the United States. This fact was not apparent on the face of the bill, and is in no way supported by the present record. Unless plaintiff actually was a "resident" of territory held by the Central Powers, the judgment must be in his favor.

Defendants argue that, by entering the service of the German army as a Red Cross surgeon, he became an officer of the German government. This contention already has been conclusively answered by the Circuit Court of Appeals:

"While from the necessities of the case Red Cross surgeons, nurses, and chaplains are in the service of the army in time of war, they form no part of the military forces proper, and, as will be seen by reference to the convention to which the United States is a party, they shall be respected and protected under all circumstances; if they fall into the hands of the enemy, they shall not be considered as prisoners of war; they shall continue in the exercise of their functions, under the direction of the enemy, after they have fallen into his power; they shall receive the same pay and allowances as persons of the same grade in his own army, and when their assistance is no longer indispensable they shall be sent back to their own army or country within such period and by such route as may accord with military necessity, taking with them such effects, instruments, arms, and horses as are their private property. Under these provisions, it would seem clear that Red Cross surgeons and nurses, who are

engaged exclusively in ameliorating the condition of the wounded of the armies in the field, and in alleviating the sufferings of mankind in general, are not enemies of the United States in any proper sense of that term. They may come within the letter of the statute, but they do not come within its spirit, or within the intention of Congress."

The surgeons and physicians of all armies are officers of one rank or another, necessarily attached to the military forces of the various powers. To ascribe to them the status of military officers, simply for this reason, would be to nullify the Convention of Geneva, as well as the presidential proclamation by which it was adopted as the law of our land. Without a clear expression of congressional intention to do so, the statute should not be interpreted to accomplish a result so undesirable. "Acts of Parliament," as was said before the existence of our present government, "are to be so construed as no man that is innocent or free from injury or wrong be, by a literal construction, punished or endamaged." Margate Pier Company v. Hannam, 3 Barn. & Ald. 266, 270, quoting Lord Coke.

In Stadtmuller v. Miller, 11 F.(2d) 732 (C. C. A. 2) decided March 19, 1926, a German alien, domiciled in the United States, but compelled to remain in Germany during the war, was held entitled to a return of property seized in like manner with that of plaintiff here; the Circuit Court of Appeals for the Second Circuit saying: "He did no act of disloyalty to the United States throughout the entire period, and returned to this country as soon as possible after the end of the war. * * * Can such a man be said to have become a resident of Germany? We think not."

The plaintiff in the case at bar, not only did no act hostile to the United States, but for more than 2½ years, commencing long prior to this country's declaration of war, he ministered to the wounded, the sick, and the suffering of all armies, was passed by English authority into the German lines, and at all times bore with him unmistakable evidence of his intention. With his assistants, by force of binding law he was entitled to be "respected and protected under all circumstances." Had he been captured by an American force, his work would have been continued without interruption, and until returned to the enemy he would have been entitled to the pay and allowances of one of our surgeons general. He was, in the highest sense of the term, a neutral, and therefore not, merely because of his presence in territory held by the German arms, a resident of

that country. To hold otherwise would be to discourage a noble work of philanthropy, done for the benefit of humanity and of all mankind.

[2-4] Plaintiff is clearly entitled to a decree ordering the immediate return of his property, together with all accumulations thereon. Under the law he is not, however, entitled to payment of interest on any cash held in the treasury (Henkels v. Miller [C. C. A. 2] 4 F.[2d] 988, 990; Kny v. Miller, 55 App. D. C. 95, 2 F.[2d] 313, 314), or to costs. A suit of this nature is, in substance, one against the United States (Banco Mexicano v. Deutsche Bank, 53 App. D. C. 266, 289 F. 924, 929; affirmed 263 U. S. 591, 602, 44 S. Ct. 209, 68 L. Ed. 465), and against the United States, as has long been settled, no relief may be awarded, unless provided for by statute.