**In re DE LUXE OIL CO.**

No. 7655.

District Court, D. Minnesota,
Third Division,

Nov. 4, 1940.

288

Robert F. Leach (of Oppenheimer, Dickson, Hodgson, Brown & Donnelly), of St. Paul, Minn., for petitioner.

William P. O'Brien and W. M. Kronebusch, both of St. Paul, Minn., for alleged bankrupt.

GLENN, Referee.

This matter came on to be heard before the undersigned referee upon the involuntary petition of Kanotex Refining Company filed herein December 22, 1938, praying that the above-named De Luxe Oil Company be adjudged bankrupt, and alleging as acts of bankruptcy that De Luxe Oil Company while insolvent permitted Kelly-Springfield Tire Company, a creditor, to obtain preferences by the assignment of accounts receivable from the said Oil Company to the said Tire Company on August 23, 1938, and on September 27, 1938, to secure a past-due debt; and upon the answer of the said De Luxe Oil Company denying the commission of said acts of bankruptcy.

At the commencement of the hearing the petitioner moved to amend its petition by the insertion of an allegation that the transfers alleged in the petition as filed were made with the intent to hinder, delay or defraud creditors, to which motion for amendment the alleged bankrupt objected. The referee took the motion under advisement, and received the proofs subject to such objection. The referee now denies said motion to amend.

After considering the evidence and the arguments of counsel, the referee makes the following findings of fact:

1. During the year 1937 and until some time in the month of September, 1938, the said De Luxe Oil Company was engaged in the operation of a retail gasoline filling station business and the sale of automobile tires and accessories in the City of St. Paul, Minnesota. On the 27th day of September, 1937, it was indebted to Kelly-Springfield Tire Company in the sum of $1,791.54 for tires and accessories previously purchased, which indebtedness was unsecured, and on that date the said De Luxe Oil Company, while solvent, assigned to said Kelly-Springfield Company certain accounts receivable representing credit sales made by the De Luxe Oil Company to its customers, aggregating $2,427.97 in amount, as security for said indebtedness. In said assignment the assignor agreed to account for any monies paid to and received by it on said assigned accounts, either by the payment to the assignee of said monies or by the replacement and substitution of another account or accounts equal in value and in amount to the monies received by the assignor, said accountings to be made on the first of each month thereafter, and additional accounts so furnished to be in lieu of and in substitution for those paid. The said assignment was filed for record in the office of of the City Clerk of the City of St. Paul on April 14, 1938, and there was annexed thereto not only the list of accounts so assigned on September 27, 1937, but also a list of accounts receivable entitled "List of accounts receivable Sept. 1st, 1937," aggregating $6,947.61 in amount, a "List of Receivable for November, 1937," aggregating $2,337.55 in amount, a "List of accounts receivables for January, 1938," aggregating $2,590.53 in amount, and a "List of accounts Receivables for February, 1938," aggregating $2,868.74 in amount.

2. Under date of April 14, 1938, the De Luxe Oil Company executed an assignment to said Kelly-Springfield Company of a list of accounts receivable aggregating $2,884.65 in amount, as supplemental to and a part of the said assignment of September 27, 1937, as additional security to the original obligation and original accounts, and to constitute such substitutions as are provided for in the original assignment by reason of accounts theretofore assigned having become settled, paid or disputed; and such assignment of April 14, 1938, was filed for record in the office of the said City Clerk on May 3, 1938.

3. Thereafter similar assignments of accounts receivable were executed by the De Luxe Oil Company to said Kelly-Springfield Company, identical in terms with the said assignment of April 14, 1938, except for the respective lists of additional

and substituted accounts attached thereto. The dates of such assignments, the aggregate of accounts so assigned, and the dates of filing thereof in the office of the City Clerk are as follows:

| | | | | |
|---|---|---|---|---|
| May 11, 1938 | $3012.43 | filed | May 18, | 1938 |
| May 31, 1938 | 2489.25 | " | June 7, | 1938 |
| July 12, 1938 | 2463.13 | " | July 18, | 1938 |
| August 4, 1938 | 2544.96 | " | Aug. 9, | 1938 |
| August 19, 1938 | 2510.96 | " | Aug. 23, | 1938 |
| September 6, 1938 | 2511.84 | " | Sept. 15, | 1938 |
| September 19, 1938 | 2500.63 | " | Sept. 27, | 1938 |

4. On the 14th day of September, 1938, and at all times thereafter, the aggregate of the property of the said De Luxe Oil Company was not at a fair valuation sufficient in amount to pay its debts, and the said De Luxe Oil Company was insolvent.

5. Prior to September 27th, 1938, all collections of said assigned accounts were made by the De Luxe Oil Company, and the Kelly-Springfield Company made no collections, and all collections so made by the De Luxe Oil Company were kept and used by it as collected for its own purposes, with no report of collections or the disposition thereof to the Kelly-Springfield Company, except for the successive assignments of approximately $2,500 each of new accounts in substitution for and to replace collected accounts. Prior to September 27, 1938, no payment whatever was made by the De Luxe Oil Company to the Kelly-Springfield Company on account of said indebtedness of $1,791.54. During the period of these assignment transactions the De Luxe Oil Company had from the Kelly-Springfield Company a consigned stock of tires and tubes, from which they were selling to their customers, and for which sales they were liable to account monthly to the Kelly-Springfield Company. The successive assignments of approximately $2,500 each of new accounts was intended by the parties as security for such indebtedness for consigned merchandise sold as well as in substitution for collected accounts.

6. In the month of June, 1938, the Kanotex Refining Company had actual notice of the said assignment of accounts by the De Luxe Oil Company and of the manner of dealing therewith as hereinbefore set forth.

7. On the 22nd day of December, 1938, the petitioner Kanotex Refining Company was a creditor of the De Luxe Oil Company, having a provable, unsecured claim fixed as to liability and liquidated as to amount in excess of $10,000, and all of the creditors of said De Luxe Oil Company were less than twelve in number. During all the times herein mentioned the said Kanotex Refining Company was a creditor of De Luxe Oil Company in an amount exceeding $9,000.

As conclusions of law, the referee finds and decides that the said assignment of accounts of September 27, 1937, and the supplemental assignments made thereafter by De Luxe Oil Company, were constructively fraudulent and void as to creditors of De Luxe Oil Company; that the said assignment of accounts dated September 19, 1938, and filed September 27, 1938, was a transfer by De Luxe Oil Company, while insolvent, to Kelly-Springfield Tire Company, a creditor, of a portion of the property of De Luxe Oil Company with intent to prefer said Kelly-Springfield Tire Company over its other creditors; and that petitioner is entitled to have said De Luxe Oil Company adjudicated a bankrupt.

It is therefore adjudged that the said De Luxe Oil Company is a bankrupt under the Act of Congress relating to bankruptcy.

The involuntary petition attempts to plead only the second act of bankruptcy, which is defined in Section 3 of the Bankruptcy Act, 11 U.S.C.A. § 21, as "having * * * transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors". The pleading omits any allegation that the transfer was made with intent to prefer, an essential ingredient of this act of bankruptcy, unless it is to be implied from the allegation that the alleged bankrupt permitted the Kelly-Springfield Company to obtain a preference by assigning to it, while the assignor was insolvent, certain accounts receivable, as security for a past-due debt. At the hearing the referee called attention to this deficiency and invited an amendment, which was not forthcoming, although counsel did move to amend to incorporate an allegation of the first act of bankruptcy—a transfer with intent to hinder, delay or defraud creditors. Obviously the requested amendment cannot be allowed, for it was offered some five months after the filing of the original petition, and nearly eight months after the alleged act was committed, and Section 3 provides that a petition may be filed only within four months after the commission of an act of bankruptcy. Acts poorly pleaded in time may be amended

after the expiration of four months, but new acts cannot be brought in after that period has expired. Counsel for petitioner in his brief cites in support of his right to amend Prentice-Hall Bankruptcy Service, p. 906. I find the rule there stated to be as follows: "The rule is settled that acts of bankruptcy not mentioned in the original petition may be pleaded in an amended petition only when such acts are alleged to have been committed within four months prior to the filing of the amended petition. It is of no moment that the act occurred within four months of the filing of the original petition."

Counsel having ignored the referee's suggestion that the pleading of the act originally pleaded be amended, and that pleading having omitted an essential ingredient of the act, it may be doubted whether he is entitled to prevail. Numerous authorities emphasize the essential character of the pleading of the intent to prefer, with respect to the second act; but some announce the rule that if the intent to prefer may be implied from the matter pleaded, the pleading is not fatally defective. The proof I believe establishes an intent to prefer. In that case I assume the pleading may be conformed to the proof, even after judgment, if it is in fact in need of amendment. For the purpose of this decision I am therefore regarding the pleading as sufficient.

The validity of this arrangement for the pledge of accounts is purely a question of Minnesota law, and not one Minnesota decision has been cited by counsel. It is true that there seem to be no Minnesota cases dealing with accounts receivable, but there are plenty of cases involving chattel mortgages of physical property affected with the vice which is charged against the arrangement we are considering, and the analogy of those cases is important authority here. What the Supreme Court of the United States or any other federal court has decided concerning the law of other states does not establish what the Minnesota law is on this subject, although if there is no settled rule here their importance as authority increases of course. I have felt obliged to read the long line of Minnesota cases dealing with free-handed chattel mortgages, and federal court decisions construing the Minnesota law, none of which have been mentioned by counsel. I have also examined text books and numerous law journal articles, and from all of these sources and citations found therein I have obtained what light I have.

The rules with respect to the free-handed mortgage vary considerably in the different states. New York for a century has had the strictest rule, which makes such a mortgage constructively fraudulent as a matter of law. Minnesota adopted this New York rule and has adhered to it consistently in a long line of decisions. Before the decision of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, 6 A.B.R.,N.S., 9, some authorities think that this New York rule with respect to mortgages of physical chattels did not apply to assignments or pledges of intangibles, the former being subject to the doctrine of reputed ownership, which it was thought did not apply to intangibles. This was apparently the view of the New York Federal District Court, and the Circuit Court of Appeals for the Second Circuit, which affirmed the right of the assignee in Benedict v. Ratner as against the trustee in bankruptcy. In re Hub Carpet Co., 2 Cir., 282 F. 12. But the Supreme Court of the United States decided otherwise. It thought that the true vice in the free-handed mortgage was not reputed ownership but reservation of dominion, and that this applied as well to intangibles as to tangibles. Professor Garrard Glenn, whose recent work on Fraudulent Conveyances and Preferences has the most thorough treatment of the subject I have found, thinks that the Supreme Court misconstrued the law of New York, and there has been other respectable criticism of that decision; but he is in entire sympathy with the idea that there should be no distinction between tangibles and intangibles in this respect, and that the law of New York making this distinction, as he understands it, was wrong. Since the decision of Benedict v. Ratner the federal courts have felt obliged to follow that decision as to the law of New York.

A very good treatment of Benedict v. Ratner, the course of decision following it, and the precautions necessary to avoid its effect, is to be found in an article in 44 Yale Law Journal, 639, 644, on Accounts Receivable as Collateral Security. Another well-reasoned article is Assignment of Accounts as Security, 22 Marquette Law Review 28.

I have found no Minnesota decisions dealing with accounts receivable; but

Minnesota has consistently followed the strict New York rule with respect to chattels, and has even gone beyond it. A number of the Minnesota decisions refuse to recognize substitution of security, in the way of a merchant keeping up his stock of goods to a stipulated value, as saving the transaction from the effect of the mortgagor being permitted to use for his own purposes the proceeds of sales. In Gallagher v. Rosenfield, 47 Minn. 507, 50 N.W. 696, 697, it is said: "And where the mortgage confers the power to sell, a provision requiring the mortgagor in possession to replenish and keep up the stock will not render it valid. The vicious element still inheres in it, and it remains fraudulent as to creditors."

It was expressly provided in the mortgage in that case that the new substituted stock should be subject to the lien of the mortgage.

In the case of In re Frey, D.C., 15 F.2d 871, there was a Minnesota free-handed mortgage of store fixtures and stock in trade, with a provision requiring the mortgagor to replenish sold stock. Judge John B. Sanborn, then District Judge, held it constructively fraudulent and void as to creditors, although it was given in good faith with no intent to defraud. He cites the long list of Minnesota cases beginning with Chophard v. Bayard, 4 Minn. 533, 4 Gil. 418, and ending with Secord v. Northwestern Tire Co., 159 Minn. 473, 199 N.W. 84. He notes the enactment of the Uniform Fraudulent Conveyances Act by Minnesota in 1921, and Section 8486 of that act, Mason's Minn.St.1927, which provides that "this act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it", and the decision in Donohue v. Campbell, 81 Minn. 107, 83 N. W. 469, concerning which he says [15 F.2d 872]: "The court called into question the correctness of the Minnesota rule, but at the same time stated that it was the settled law of the state. The petitioner now claims that that decision indicates a desire on the part of the Supreme Court to change its rule, and that the section of the statute just referred to furnishes it the opportunity to do so; that, under the circumstances, it cannot be said to be the settled law of Minnesota that a mortgage such as that herein involved is constructively fraudulent, because the rule in the federal courts and in many of the states is otherwise. [Citing authorities.] The rule in many jurisdictions is that the fact that mortgaged goods are to be consumed in the usual course of business does not, as a matter of law, necessarily avoid a chattel mortgage upon them, although that is a matter properly to be considered in determining whether the mortgage was fraudulent or not, and that each case must depend upon its own peculiar circumstances. The rule in Minnesota is not without support, however, in decisions of many other states, although it is, perhaps, true that the greater weight of authority supports the other view. The only question which this court is called upon to decide is whether the rule in this state is settled, or whether it is still open to doubt. In view of the long line of decisions, commencing with Chophard v. Bayard in 4 Minn. 533 ([4] Gil. 418), * * * there would seem to be little, if any, basis for the assumption that the Supreme Court of Minnesota would adopt a different rule. The dicta in Donohue v. Campbell, supra, and the provision as to construction of the Uniform Fraudulent Conveyances Act would not, in my judgment, be sufficient to justify a conclusion that the law had become unsettled."

In Lee v. State Bank & Trust Co., 2 Cir., 54 F.2d 518, 85 A.L.R. 216, 19 A.B.R., N.S., 445, 449, it was held that the rule of Benedict v. Ratner had not been abolished by the adoption in New York of the Uniform Fraudulent Conveyances Act, Debtor and Creditor Law N.Y. § 270 et seq. This holding is affirmed in Irving Trust Co. v. Finance Service Co., 63 F.2d 694, 696, 23 A.B.R.,N.S., 7, (certiorari denied 289 U. S. 763, 53 S.Ct. 796, 77 L.Ed. 1506) where the Circuit Court of Appeals of the Second Circuit, speaking through Circuit Judge Learned Hand, discusses the effect of Benedict v. Ratner on the New York law, the state of the New York law prior to that decision, and the obligatory effect of that decision upon the Circuit Court of Appeals. In this Irving Trust Co. case a trustee in bankruptcy sought to set aside as fraudulent certain assignments of accounts for security, and the dealings of the parties were much similar to those involved in the case at bar. The District Court held the case to be within the doctrine of Benedict v. Ratner, and set aside the assignments, and this is affirmed by the Circuit Court of Appeals in an opinion which is quite persuasive authority for

292

the invalidity of the assignments in our case.

A case which is on all fours with ours in its facts is In re Lambert & Braceland Co., D.C.Pa., 29 F.2d 758, 13 A.B.R.,N.S., 292. It construes the Pennsylvania law, which seems to be essentially the same as ours. I agree with everything said in the opinion in that case, and might have adopted it almost verbatim for my decision here. I shall do so, however, only by reference. It states my views of the case at bar fully.

■■■ As pointed out by Judge Kirkpatrick in his opinion in that case, if the parties had done what they said they were going to do in their written instrument, it would have been valid; but the trouble is that they did something else. In our case the assignment required the assignor to account for the monies collected, either by payment of the monies to the assignee or by the replacement and substitution of other accounts equal in value and amount to the monies received by the assignor. In the Lambert case the assignor was given a similar substitution privilege. In each case for a period of a month after each successive assignment the assignor collected the accounts and used the money in his business without any substitution of collateral or furnishing of new collateral and without any segregation or earmarking of the collected funds. Then when at the end of the month a new assignment was made it was necessarily for a past rather than a contemporaneous indebtedness; and hence the preference, the assignor being insolvent. It is of course valid for the assignor to act as the agent of the assignee in collecting the accounts, but if he does so he must treat the money as the assignee's and not as his own. This may seem a narrow point on which to hinge the validity of the transaction, but it has real substance I think. It is not too much to ask that the assignor segregate the collections in a separate account as property of the assignee, to be released for the use of the assignor only when new collateral is assigned for the new loan.

We have here, it appears to me, a sort of a half-way case—half way between Benedict v. Ratner, where all present and future accounts were assigned, with no segregation of or accounting for collections and complete and unrestricted dominion reserved in the assignor, and a case where the strict terms of the assignment such as we have here were carried out, so that substitutions and release of the collected funds to the assignor were simultaneous—new and strictly contemporaneous loans. It is suggested in the article in 44 Yale Law Journal I have referred to that the law is so incompletely developed in most jurisdictions that the courts may be said to be at liberty to make their own law on the subject as to just what conditions will be insisted upon in the handling of the accounts and the collected proceeds, in order to save the transaction from the vice of "unfettered dominion" on the part of the assignor. It may be that when the Minnesota Supreme Court comes to pass on this question it will adopt a more liberal view than that reflected in the Lambert case decision. Judge Kirkpatrick notes the probable hardship to lenders from the rule he announces. But I do not believe it is the province of a referee in bankruptcy to assume that the Minnesota court will adopt a rule which runs counter to that decision.

Another Pennsylvania case is that of Fergusson Drug Co., D.C., 19 F.Supp. 206, 33 A.B.R.,N.S., 755. The case involves the assignment of accounts receivable as security, and follows Benedict v. Ratner. The referee in bankruptcy had directed the trustee to pay over to the assignee claimant the proceeds of certain accounts receivable. The referee's order is reversed and the assignee claimant's petition dismissed. The court says that where the assignor is authorized to collect the accounts for the assignee, the relation of principal and agent arises and the proceeds of collection are the property of the assignee, so long as he does not consent to the assignor intermingling such proceeds with his own funds, that if there is such intermingling with the knowledge and consent of the assignee, the relationship of principal and agent is terminated and the ordinary relationship of debtor and creditor takes place, and the funds are the property of the assignor. This Fergusson case was affirmed by the Circuit Court of Appeals for the Third Circuit in Markovitz v. Taylor, 94 F.2d 782, 36 A.B.R.,N.S., 1.

McCluer v. Heim-Overly Realty Company, 71 F.2d 100, 103, 25 A.B.R.,N.S., 656, is a decision of the Circuit Court of Appeals for the Eighth Circuit. It involved an assignment of accounts, which was held valid because the collected funds

were kept in a separate and distinct account and used for proper purposes. The court says in its opinion: "Whether such an assignment has the effect of a lien so as to avoid the charge of being fraudulent or constituting a preference depends upon the extent of dominion over such accounts and over the proceeds therefrom permitted the assignor either by the instrument of assignment or by the conduct under the assignment permitted by the assignee. [Citing Benedict v. Ratner.] Here the dominion of the assignor was closely restricted to payments on the construction contracts and to retirement of the advances made by the assignee. * * * The assigned funds were kept in a separate special account in a bank where (because an officer of appellee was an officer in the bank) a close supervision could be exercised over that account. This arrangement was strictly adhered to except as to $13,000, which was improperly diverted by the bankrupt from this account without the consent of appellee. This restriction of dominion was sufficient to sustain the assignment as a lien upon these accounts. The situation here is quite different from that in the Benedict Case, supra, and in Blue v. Herkimer National Bank [2 Cir.] 30 F. (2d) 256 [13 A.B.R. (N.S.) 416] (much relied upon by appellant), where collections from the assigned accounts were placed in the general accounts of the assignors and they were permitted to use such funds freely for their own general purposes."

SULLIVAN, District Judge.

The court being fully advised in the premises, upon the findings of fact as appears from the return of the referee, and upon the briefs and arguments of counsel,

It is ordered that the order of the referee finding and deciding that the said assignment of accounts of September 27, 1937, and the supplemental assignments made thereafter by the De Luxe Oil Company were constructively fraudulent and void as to creditors of the De Luxe Oil Company; that the said assignment of account dated September 19, 1938, and filed September 27, 1938, was a transfer by the De Luxe Oil Company while insolvent, to Kelly-Springfield Tire Company, a creditor, of a portion of the property of the De Luxe Oil Company, with intent to prefer said Kelly-Springfield Tire Company over its other creditors, and that the Kano-

tex Refining Company, petitioning creditor, is entitled to have said De Luxe Oil Company adjudicated a bankrupt; and adjudging that the said De Luxe Oil Company is a bankrupt under the Act of Congress relating to bankruptcy, 11 U.S.C.A. § 1 et seq., be, and the same is hereby in all things, approved and confirmed.

The referee has fully discussed the contentions of the respective parties. There is no need of further analysis of the cases referred to. The grounds and reasons of the referee in arriving at his decision are sound, and are adopted by the court and made a part hereof.